1

ANDREA RODGERS HARRIS, WSBA #38683
The Law Office of Andrea Rodgers Harris

2

2907 S. Adams St.
Seattle, WA 98108

3

Tel. 206.696.2851
E-mail: akrodgersharris@yahoo.com

4

5

*Local Counsel for Plaintiff*

DANIEL C. SNYDER, *pro hac vice application*

6

*forthcoming*
OSB# 105127

7

Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.

8

Eugene, OR 97401
Tel. 541.344.3505

9

E-mail: dan.tebbuttlaw@gmail.com

10

*Counsel for Plaintiff*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

12

13

COMMUNITY ASSOCIATION FOR
RESTORATION OF THE
ENVIRONMENT, INC., a Washington

14

Non-Profit Corporation,

Plaintiff,

15

v.

16

THE UNITED STATES
ENVIRONMENTAL PROTECTION

17

AGENCY,

18

Defendant

19

20

Case No. 2:13-cv-03067-RMP

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

FREEDOM OF INFORMATION ACT &
ADMINISTRATIVE PROCEDURE ACT

FIRST AMENDED COMPLAINT                                    1

Plaintiff, the Community Association for Restoration of the Environment, Inc. ("CARE"), hereby submits this First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1).  Less than 21 days have passed since service of the original Complaint on Defendant, and therefore amendment as a matter of course is authorized.  Accordingly, Plaintiff alleges as follows:

## **INTRODUCTION**

1.    This action is premised upon, and consequent to, violations of the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.  It challenges the unlawful failure of the Defendant, the United States Environmental Protection Agency ("EPA" or "Agency"), to abide by the statutory requirements of the FOIA and the APA.

2.    In particular, EPA has violated the FOIA and the APA by: (**1**) failing to provide a legally adequate determination resolving one of CARE's FOIA request within the time limits prescribed by law; (**2**) failing to abide by statutory and regulatory procedures in responding to and processing CARE's FOIA requests; (**3**) unlawfully withholding from public disclosure information sought by CARE, information to which it is entitled and for which no valid disclosure exemption applies; and (**4**) maintaining an illegal pattern, practice, and/or policy of unreasonably delaying production of records responsive to FOIA requests based on justifications not cognizable under the statute.

FIRST AMENDED COMPLAINT                                                      2

3.     CARE seeks declaratory relief establishing that EPA has violated the FOIA and the APA.  CARE also seeks injunctive relief directing EPA to promptly provide the requested material.  Additionally, CARE seeks an order from the Court declaring that EPA has adopted an illegal pattern, practice, and/or policy of unreasonably withholding records responsive to FOIA requests.  Finally, CARE requests that the Court award Plaintiff its reasonable attorneys fees and costs incurred in bringing this action.

## JURISDICTION

4.     The Court has subject matter jurisdiction over this lawsuit pursuant to 5 U.S.C. § 552(a)(4)(B) because CARE both resides and has its principal place of business in the Eastern District of Washington.

5.     The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the FOIA, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

## VENUE

6.     Venue properly vests in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) because CARE both resides and has its principal place of business in the Eastern District of Washington.

## PARTIES

7.     Plaintiff CARE is a non-profit corporation organized under the laws of the

FIRST AMENDED COMPLAINT                                                              3

1  State of Washington.  CARE's principal office is located in Outlook, Washington.

2  8.    CARE is a grassroots organization composed of concerned community

3  members.  Its mission is to inform Washington state residents about activities that

4  endanger the health, welfare, and quality of life for current and future

5  Washingtonians through education and citizen empowerment.  CARE also acts as

6  an advocate to protect and restore the economic, social, and environmental

7  resources of the region.  In carrying out its mission, CARE has appeared in

8  numerous local, state, and federal proceedings.

9  9.    EPA is an agency of the executive branch of the United States government.

10  EPA is in possession and control of the records sought by CARE, and as such, it is

11  subject to the FOIA pursuant to 5 U.S.C. § 552(f).

12  **LEGAL FRAMEWORK**

13  10.    The FOIA requires U.S. government agencies to promptly make public

14  records available to any person who makes a request which (1) reasonably

15  describes the records sought and (2) complies with any applicable agency rules for

16  making such a request.  5 U.S.C. § 552(a)(3)(A).

17  11.    The FOIA obligates federal agencies to issue a final determination on any

18  such information request within twenty business days from the date of its receipt.

19  5 U.S.C. § 552(a)(6)(A)(i).  In issuing a final determination, an agency is required

20  to inform the requester of three things: (1) the agency's determination of whether

FIRST AMENDED COMPLAINT                                    4

or not to comply with the request; (2) the reasons for its decision; and (3) notice of the right of the requester to appeal to the head of the agency.  *Id*.

12.    The FOIA allows an agency to extend the twenty-day determination deadline by up to ten business days when "unusual circumstances" exist and when the agency so notifies a requester in writing.  5 U.S.C. § 552(a)(6)(B).  An agency is entitled to one ten-business day extension.  *Id*.  The written notice provided to the requester must specify the unusual circumstances justifying the extension and the date on which a final determination is expected to be dispatched.  *Id*.

13.    In some circumstances, the FOIA allows an agency to invoke an extension beyond ten days.  To invoke a longer extension, the FOIA requires an agency to provide written notification to the requester that (1) offers the requester an opportunity to limit the scope of the request so that it may be processed within the FOIA's original time limits, or (2) offers the requester an opportunity to arrange with the agency an alternative time frame for processing the request.  5 U.S.C. § 552(a)(6)(B)(ii).  The agency must also make available to the requester its FOIA public liaison, who is tasked with resolving any dispute between the requester and the agency.  *Id*.  When invoking a longer extension, an agency must still notify the requester of the expected date on which a final determination will be dispatched.  5 U.S.C. § 552(a)(6)(B)(i).

14.    EPA's implementing regulations further provide that, if the Agency invokes

FIRST AMENDED COMPLAINT                                                                                        5

1  unusual circumstances and delays its determination deadline by more than ten

2  working days, then the Agency shall provide the requester "with an opportunity to

3  modify the request so it may be processed within the 10 working day time limit

4  extension or to arrange an alternative time period for processing the original or

5  modified request."  40 C.F.R. § 2.104(d).

6  15.    If an agency fails to provide a final determination on a FOIA request within

7  the statutory timeframe, the requester is deemed to have exhausted its

8  administrative remedies and may immediately file suit against the agency.  5

9  U.S.C. § 552(a)(6)(C)(i).

10  16.    EPA regulations also provide that, "[i]f EPA fails to respond to your request

11  within the 20 working day period, or any authorized extension of time, you may

12  seek judicial review to obtain the records without first making an administrative

13  appeal."  40 C.F.R. § 2.104(a).

14  17.    If an agency issues some type of adverse determination on a FOIA request,

15  the requester may administratively appeal that determination in writing to the head

16  of the agency.  The statute grants an agency twenty business days to make a

17  determination on any such appeal.  5 U.S.C. § 552(a)(6)(A)(ii).

18  18.    If an agency does not issue a determination on an administrative appeal

19  within the twenty-day timeframe, then the requester is deemed to have exhausted

20  its administrative remedies and may immediately file suit against the agency.  5

FIRST AMENDED COMPLAINT                                    6

1   U.S.C. § 552(a)(6)(C)(i).

2   19.    The FOIA requires federal agencies to promptly disclose all records

3   responsive to a FOIA request unless one of nine statutory exemptions applies.  One

4   of those exemptions allows agencies to withhold from public disclosure "records or

5   information compiled for law enforcement purposes, but only to the extent that the

6   production of such law enforcement records or information…could reasonably be

7   expected to interfere with enforcement proceedings."  5 U.S.C. § 552(7)(A).

8   20.    Another disclosure exemption allows agencies to withhold "trade secrets and

9   commercial or financial information obtained from a person and privileged or

10  confidential."  5 U.S.C. § 552(b)(4).  This exemption is routinely referred to as the

11  "confidential business information" exemption.

12  21.    EPA has promulgated regulations for addressing claims of confidential

13  business information under 5 U.S.C. § 552(b)(4).  40 C.F.R. § 2.204(b), (c).  First,

14  when EPA determines that a records request seeks information that could be

15  exempt from disclosure under 5 U.S.C. § 552(b)(4), the Agency must inform a

16  "responsible official" at the potentially affected business "that any claim the

17  business wishes to assert must be brought to the EPA office's attention no later

18  than the close of business on the third working day after such inquiry."  40 C.F.R.

19  § 2.204(c)(2)(ii).  EPA is required to maintain records of any such initial inquiry

20  by the Agency.  40 C.F.R. § 2.204(c)(2)(iii).

FIRST AMENDED COMPLAINT                                                          7

22.     A business must respond during the three-business day window in order to claim that the information sought by a FOIA request should be exempt from disclosure as confidential business information.  40 C.F.R. § 2.204(c)(3).

23.      If a business does respond, EPA next evaluates the business's claim of confidentiality based on the information it receives from that business.  40 C.F.R. § 2.204(d).  If EPA "determines that the [requested] information may be entitled to confidential treatment," then the Agency is required to provide notice to the FOIA requester that the information is being claimed confidential.  40 C.F.R. § 2.204(d)(1)(ii).

24.     EPA must also promptly notify the affected business of its "opportunity to submit comments."  40 C.F.R. § 2.204(d)(1)(i).  That notice allows affected businesses an opportunity to submit substantive comments explaining why the business information sought by a public records request should not be disclosed pursuant to the confidential business information exemption.  40 C.F.R. § 2.204(d), (e).

25.     The business's deadline for submission of comments "shall be 15 working days after the date of the business's receipt of the written notice."  40 C.F.R. § 2.204(e)(1).  If no comments are received during that timeframe, then the affected business waives its right to assert that the information sought is exempt from disclosure.  40 C.F.R. § 2.204(e); *see also* 40 C.F.R. § 2.205(d)(1) ("If the EPA

FIRST AMENDED COMPLAINT                                                                                      8

1   legal office finds that a business has failed to furnish comments under paragraph

2   (b) of this section by the specified due date, it shall determine that the business has

3   waived its claim.").

4   26.    The "comment" period established by EPA regulations may not be extended

5   beyond 15 working days "without the consent of any person whose request for

6   release of the information under 5 U.S.C. 552 is pending," unless extraordinary

7   circumstances are present.  40 C.F.R. § 2.205(b)(2).

8   27.    Even if a record is deemed by an agency to be exempt from disclosure,

9   "[a]ny reasonably segregable portion of a record shall be provided to any person

10  requesting such record after deletion of the portions which are exempt[.]"  5 U.S.C.

11  § 552(b).

12  **FACTS**

13  28.    In September, 2012, EPA released a report entitled "Relation Between

14  Nitrate in Water Wells and Potential Sources in the Lower Yakima Valley,

15  Washington," EPA-910-R-12-003 (the EPA "Report").

16  29.    The purpose of the Report was to investigate the contribution of various

17  sources from nearby land uses to the high nitrate levels in groundwater and

18  residential drinking water wells observed in parts of the Lower Yakima Valley.

19  30.    The findings of the Report strongly indicated that the manure management

20  and storage practices of six dairies, all of which are classified as large

FIRST AMENDED COMPLAINT                                                    9

1   Concentrated Animal Feeding Operations or "CAFOs" under federal law, were the

2   predominant sources of the nitrate contamination observed in the area's

3   groundwater.

4   31.    Between September, 2012, and March 19, 2013, EPA engaged in

5   negotiations with five of these six dairies to address the contamination originating

6   from their operations.

7   32.    Those negotiations entailed an unspecified number of written

8   communications being exchanged between the dairies and EPA.  The dairies were

9   both the originators and recipients of those communications.

10  33.    The culmination of those negotiations was an Administrative Order on

11  Consent ("AOC"), which was formally executed by EPA and five of the dairies on

12  March 19, 2013.

13  34.    EPA is no longer investigating the five dairies who signed the AOC for the

14  purposes of a pending or prospective law enforcement proceeding.

15  35.    The execution of the AOC concluded EPA's investigation of, and law

16  enforcement proceeding against, the five dairies subject to the Order.

17  36.    On January 29, 2013, CARE submitted a FOIA request to EPA ("Request

18  One").  Request One sought electronic copies of facts readily available to EPA:

19  "all preliminary and/or final sampling results of the groundwater sampling that

20  occurred in the Yakima Valley between December, 2012 to the present."  This

FIRST AMENDED COMPLAINT                                                    10

Request was premised on a statement found on EPA's website, which indicated that the Agency had conducted additional groundwater sampling at the dairies in December, 2012.

37.     Request One was electronically submitted to EPA Region 10's FOIA e-mail address, "r10.foia@epa.gov."  Request One was also submitted to EPA through the Agency's "FOIAOnline" website.  A copy of the Request is attached hereto as Exhibit 1, pg. 42.

38.     CARE received electronic notice from EPA that it had received Request One on January 29, 2013.  Request One was given tracking number EPA-R10-2013-003224.

39.     Based on EPA's date of receipt of Request One, and excluding the federal holiday for Washington's Birthday (February 18), the Agency's initial twenty-day determination deadline was February 27, 2013.

40.     On February 1, 2013, CARE submitted another FOIA request to EPA ("Request Two").  The Request was electronically submitted to EPA Region 10's FOIA e-mail address, "r10.foia@epa.gov."  Request Two was also submitted to EPA through the Agency's "FOIAOnline" website.  A copy of Request Two is attached as Exhibit 2, pg. 43.

41.     Request Two sought records of "all communications" between representatives of the six named dairies and EPA Region 10 personnel from

FIRST AMENDED COMPLAINT                                                           11

1   "September 1, 2012 to the present."

2   42.    CARE received electronic notice from EPA that it had received Request

3   Two on February 1, 2013.  The Request was given tracking number "EPA-R10-

4   2013-003302."

5   43.    Based on EPA's date of receipt of Request Two, and excluding the federal

6   holiday for Washington's Birthday (February 18), the Agency's initial twenty-day

7   determination deadline was Monday, March 4.

8   44.    On February 27, the date EPA's twenty-day determination deadline ran for

9   Request One, CARE wrote a letter to Dennis McLerran, EPA Administrator for

10  Region 10.  In that letter, CARE explained that the information it sought in

11  Request One "had been available to the Agency for over a month, has likely been

12  produced to the offending dairies, and is critical to meaningful public

13  participation."  That letter emphasized that, "[a]ll we ask for is the factual

14  information – information to which we are entitled to as a matter of law."

15  45.    EPA never responded to CARE's February 27 letter.

16  46.    Instead, on Thursday, February 28, counsel for CARE had several phone

17  conversations with Allyn Stern, Regional Counsel for EPA Region 10.  During

18  those conversations, Ms. Stern informed CARE's counsel that EPA would not

19  produce a timely determination resolving Request One, was seeking an extension

20  of its time to respond to Request One based on "unusual circumstances," and

FIRST AMENDED COMPLAINT                                                    12

1    would be withholding records responsive to the Request until a later date.  Ms.

2    Stern explained that EPA was not reviewing the requested information for any

3    disclosure exemptions, but rather that the Agency simply needed to "review" the

4    records.

5    47.    Ms. Stern then explained that the Agency was not going to release the

6    records because EPA was concerned that such a release would "enflame" the

7    dairies with whom EPA was negotiating the terms of the AOC.  According to Ms.

8    Stern, EPA was worried that, if it released the information subject to Request One

9    prior to execution of the AOC, EPA's settlement negotiations with the dairies

10    would be thrown off track.

11    48.    CARE's counsel informed Ms. Stern during those phone conversations that

12    withholding public records for these reasons was illegal under the FOIA.

13    49.    The undersigned wrote an e-mail declaration to himself, dated February 28,

14    2013, which memorialized the contents of his conversation with Ms. Stern.  A

15    copy of that e-mail is attached hereto as Exhibit 3, pg. 44.

16    50.    Ms. Stern had a similar conversation with CARE's other attorney, Charles

17    M. Tebbutt, also on February 28.  Mr. Tebbutt informed Ms. Stern that

18    withholding public records for political reasons was illegal and improper under the

19    FOIA.  Ms. Stern then orally committed to getting CARE the requested records by

20    March 6.

FIRST AMENDED COMPLAINT                                                    13

51.     On February 28 at 7:43 PM PST, one day past Request One's twenty-day determination deadline and after the conversations described *supra*, CARE received electronic notice from EPA that it was invoking the FOIA's "unusual circumstances" exception to delay its determination deadline by ten business days. A copy of the notice is attached as Exhibit 4, pg. 45.

52.     That notice listed the "unusual circumstances" justifying the need for the delay as "the need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices having a substantial subject-matter interest in your request."

53.     That notice further stated that "[t]he new due date for disclosure determination to your FOIA request is ten days from today, March 14, 2013."

54.     On March 5, CARE wrote an e-mail to Allyn Stern.  That message memorialized the prior conversations that had transpired between Ms. Stern and CARE's counsel.  The message explained that CARE was "dismayed by EPA's reluctance to abide by the requirements of the FOIA[,]" and that "it appears EPA has made a deliberate choice to conceal this information pending resolution of its settlement negotiations with the offending dairies."  The e-mail went on to state that "[s]uch actions by EPA unfortunately demonstrate that the Agency is more concerned with appeasing the dairy lobby than protecting the public's health and its right to access government records."  The e-mail concluded by informing EPA

FIRST AMENDED COMPLAINT                                                                14

1  that CARE would file a lawsuit against the Agency if it did not produce records

2  responsive to Request One by March 6.  A copy of the e-mail is attached hereto as

3  Exhibit 5, pp. 46-47.

4  55.    EPA never responded to CARE's March 5 e-mail.

5  56.    On March 5, the dairies and EPA officially agreed to the terms of the AOC.

6  57.    At 6:08 PM on March 5, EPA employees David Allnut and Jennifer

7  MacDonald sent an e-mail to CARE's counsel.  That e-mail sought to schedule a

8  meeting with CARE's counsel on March 6 to discuss recent updates about the

9  execution of the AOC and the transmission of records responsive to Request One.

10 58.    Also on March 5, one day past Request Two's twenty-day determination

11 deadline, CARE received an electronic notice from EPA that it was invoking the

12 FOIA's "unusual circumstances" exception to delay its determination deadline for

13 Request Two by ten business days.  A copy of the notice is attached as Exhibit 6,

14 pg. 48.

15 59.    That notice listed the "unusual circumstances" justifying the need for the

16 delay as "the need for consultation, which shall be conducted with all practicable

17 speed, with another agency or EPA offices having a substantial subject-matter

18 interest in your request."

19 60.    That notice further stated that "[t]he new due date for disclosure

20 determination to your FOIA request is ten days from today, March 21, 2013."

FIRST AMENDED COMPLAINT                                          15

61.    EPA's March 5 notice did not provide CARE with an opportunity to narrow the scope of the Request Two so that a determination could be dispatched within the FOIA's original time limits.

62.    EPA's March 5 notice did not provide CARE with an opportunity to arrange an alternative timeframe for responding to Request Two.

63.    EPA's March 5 notice did not make EPA's FOIA Liaison available to CARE.

64.    CARE responded to EPA that same day.  In a brief message, CARE explained that the original twenty-day determination deadline for Request Two had passed on March 4, making EPA's invocation of unusual circumstances untimely and improper under the FOIA.  CARE also requested that EPA explain which EPA offices or other federal agencies had a "substantial subject-matter interest" in Request Two.  Finally, CARE's response explained that a ten-business day extension would make the new determination deadline March 19, not March 21, as EPA had suggested.  CARE therefore asked for confirmation that the new determination deadline was March 19, 2013.  A copy of CARE's message is attached as Exhibit 7, pp. 49-51.

65.    EPA never responded to CARE's March 5 response.

66.    The "unusual circumstances" extension EPA granted itself, delaying its determination deadline for Request Two until March 21, constituted a 12-working

FIRST AMENDED COMPLAINT                                                    16

1    day extension under the statute.

2    67.    On March 6, counsel for CARE had a phone conference with EPA

3    employees Jennifer MacDonald and David Allnut, as discussed *supra* at ¶ 57.

4    During that call, EPA informed CARE that the AOC had been executed, and that

5    the Agency could now provide CARE with records responsive to Request One.

6    68.    Later that same day, CARE received records responsive to Request One via

7    e-mail.

8    69.    These records were only transmitted to CARE after EPA and the dairies had

9    agreed to the terms of the AOC.

10   70.    There is no provision in the FOIA allowing federal agencies to withhold

11   records containing purely factual matters under these circumstances.  If a federal

12   agency knows where records are, it "shall make the records promptly available to

13   any person."

14   71.    EPA's deliberate choice to delay the provision of records responsive to

15   Request One until after the AOC was executed demonstrates misconduct and bad

16   faith on the part of the Agency in fulfilling its duties under the FOIA.

17   72.    Concerning Request Two, EPA did not produce any documents to CARE on

18   March 21, as it had promised.  *See* ¶ 60, *supra*.

19   73.    EPA also did not provide CARE with a determination on the Request on

20   March 21.

FIRST AMENDED COMPLAINT                                              17

1    74.    EPA did not contact CARE in any way on March 21.

2    75.    Consequently, on March 26, CARE provided a letter to EPA.  That letter

3    informed EPA that it had failed to issue a determination on Request Two by March

4    21, the new determination date that EPA unilaterally granted itself on March 5.  A

5    copy of CARE's letter is attached as Exhibit 8, pg. 52.

6    76.    That letter also informed EPA that CARE would file a lawsuit against EPA

7    if it did not issue a determination on Request Two within five business days of

8    March 26.

9    77.    On March 28, EPA provided an "interim response" to Request Two.  That

10   "response" provided CARE with a link to a "subset of the documents" that were

11   provided on EPA's "FOIAOnline" homepage.  A copy of this response is attached

12   as Exhibit 9, pg. 53.

13   78.    EPA's March 28 letter did not explain whether or not EPA would comply

14   with Request Two.

15   79.    EPA's March 28 letter did not provide CARE with a determination from

16   which it could file an administrative appeal.

17   80.    EPA's March 28 letter was not a determination under the FOIA, 5 U.S.C. §

18   552(a)(6)(A).

19   81.    No further communications were received from EPA until May 2, 2013,

20   when EPA provided CARE with another "interim response" for Request Two.  A

FIRST AMENDED COMPLAINT                                                    18

1    copy of the response is attached as Exhibit 10, pp. 54-55.

2    82.    This response, dated April 30, provided CARE with a link to additional

3    documents located on EPA's "FOIAOnline" website.

4    83.    EPA's April 30 response informed CARE that the Agency was withholding

5    "certain records…because they concern settlement negotiations [with the five

6    dairies] and are exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) as records

7    compiled for law enforcement purposes, but only to the extent that the release of

8    records could interfere with enforcement proceedings." EPA stated that

9    approximately 300 pages were being withheld that were responsive to Request

10   Two.

11   84.    EPA also stated in its response that some records responsive to Request Two

12   were also being withheld pursuant to 5 U.S.C. § 552(b)(4), which pertains to

13   information claimed by businesses as trade secrets or commercial or financial

14   information that is exempt from disclosure. The Agency stated that it had made an

15   "initial" determination that the responsive records constituted confidential business

16   information, and that it would confer with third-party businesses in connection

17   with their confidentiality claims and issue a final confidentiality decision at some

18   later, unspecified date.

19   85.    EPA's letter did not inform CARE of how many pages of documents were

20   being claimed as exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4), nor did

FIRST AMENDED COMPLAINT                                                          19

1   it provide any reasonably segregable portions of the withheld records, as the FOIA

2   requires.  5 U.S.C. § 552(b).

3   86.    Because EPA was withholding certain responsive information, the Agency

4   stated that its April 30 letter was "an interim denial response to FOIA request

5   EPA-R10-2013-003302."

6   87.    EPA's response did not explain whether or not EPA would comply with

7   Request Two.

8   88.    EPA's response was not a determination under the FOIA, 5 U.S.C. §

9   552(a)(6)(A).

10   89.    Upon information and belief, EPA did not conduct any meaningful,

11   independent review of the records withheld pursuant to 5 U.S.C. § 552(b)(4), the

12   FOIA's "confidential business information" exemption.

13   90.    Instead, upon information and belief, EPA deliberately and intentionally

14   withheld these documents at the request of the dairies that are subject to the AOC,

15   in direct contravention of its legal duties under the FOIA.  Such withholdings

16   demonstrate misconduct and bad faith on the part of EPA in responding to and

17   processing Request Two.

18   91.    EPA's April 30 response was, in part, an appealable adverse decision.  In

19   particular, the response stated that "[y]ou may appeal this response to the National

20   Freedom of Information Officer[.]"

FIRST AMENDED COMPLAINT                                                              20

92.   The only decision contained in EPA's April 30 response that could be administratively appealed was the Agency's determination that 300 pages of responsive records would be withheld under 5 U.S.C. § 552(b)(7)(A).

93.   On May 24, CARE filed an administrative appeal of the "interim" denial of Request Two as it pertained to the 300 pages of materials being withheld under 5 U.S.C. § 552(b)(7)(A).

94.   CARE's administrative appeal was timely filed within the thirty-day appeal window specified by EPA's April 30 response.

95.   CARE's administrative appeal specifically reserved CARE's right to challenge EPA's other withholdings under 5 U.S.C. § 552(b)(4) until such a time that the Agency actually provided CARE with a "final" confidentiality determination from which CARE could appeal.

96.   CARE's administrative appeal stated that EPA's withholding of 300 pages of responsive materials under 5 U.S.C. § 552(b)(7)(A) was unsupportable as a matter of law.  CARE asserted that the disclosure exemption relied upon by EPA was inapplicable to settlement negotiations, where the targets of the investigation – in this case, the five dairies that entered into the AOC – were both the originators and recipients of the information being withheld.  CARE also asserted that the exemption was inapplicable because the "investigation" was over and the law enforcement proceeding complete, as the AOC had been signed and formally

FIRST AMENDED COMPLAINT                                                                    21

executed on March 19, 2013.  A copy of CARE's administrative appeal is attached hereto as Exhibit 11, pp. 56-63.

97.    EPA notified CARE that it had received CARE's administrative appeal on May 30, 2013.

98.    Based on EPA's acknowledgment, the Agency's twenty-day determination deadline on CARE's administrative appeal was June 27, 2013.

99.    As of the date of this First Amended Complaint, EPA has not resolved CARE's pending administrative appeal.

100.    As of the date of this First Amended Complaint, more than twenty working days have elapsed since CARE filed its administrative appeal with the Agency.

101.    As of the date of this First Amended Complaint, CARE has yet to receive a determination on the Request pursuant to 5 U.S.C. § 552(a)(6)(A).

102.    At no point in time did EPA request that CARE extend the 15-day comment period for a business' opportunity to provide information concerning confidential business information.

## CAUSES OF ACTION

## COUNT I

## FAILURE TO PROVIDE TIMELY & LEGALLY ADEQUATE DETERMINATION ON REQUEST TWO

103.    The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

FIRST AMENDED COMPLAINT                                                                          22

104.    CARE has a statutory right to have EPA process its FOIA requests in a manner which complies with the FOIA.  Plaintiff's rights in this regard were violated when EPA unlawfully delayed informing CARE of its final determination on Request Two beyond the twenty-day determination deadline imposed by the FOIA.  5 U.S.C. § 552(a)(6)(A)(i).

105.    In issuing a determination under the FOIA, EPA was required to inform CARE of three things: (1) the Agency's determination of whether or not to comply with the Request; (2) the reasons for its decision; and (3) notice of the right of CARE to appeal the Agency's decision to the head of the EPA.  5 U.S.C. § 552(a)(6)(A)(i).

106.    The twenty-day determination deadline for the Request Two was originally March 4, 2013.

107.    EPA unilaterally granted itself a 12-business day extension to the determination deadline on March 5, 2013 – one day after the deadline originally ran.

108.    EPA's new, unilaterally-identified determination deadline was March 21, 2013.  EPA did not provide CARE with a determination resolving Request Two on that date.

109.    EPA's March 28 and April 30 letters also did not provide CARE with a determination resolving Request Two under 5 U.S.C. § 552(a)(6)(A).

1    110.    To date, CARE has not received a timely or legally adequate determination

2    resolving Request Two under the FOIA.

3    111.    Based on the nature of CARE's organizational activities, CARE will

4    continue to employ the FOIA's provisions in information requests to EPA in the

5    foreseeable future.  These activities will be adversely affected if EPA is allowed to

6    continue violating FOIA's response deadlines.

7    112.    Unless enjoined and made subject to a declaration of Plaintiff's legal rights

8    by this Court, EPA will continue to violate the rights of Plaintiff to receive public

9    records under the FOIA.

10   113.    EPA's failure to make a final determination on Request Two within the

11   statutory timeframe has prejudiced Plaintiff's ability to timely obtain public

12   records.

13   114.    EPA's failure to issue a timely and legally adequate determination on

14   Request Two within the statutory timeframe and within EPA's unilateral, twelve-

15   day extension means that CARE has constructively exhausted its administrative

16   remedies.  5 U.S.C. § 552(a)(6)(C)(i).

17                                    **COUNT II**

18        **FAILURE TO ABIDE BY STATUTORY AND REGULATORY**
     **PROCEDURES IN RESPONDING TO AND PROCESSING CARE'S FOIA**
19                                  **REQUESTS**

20   115.    The allegations made in all preceding paragraphs are realleged and

FIRST AMENDED COMPLAINT                                              24

1   incorporated by reference herein.

2   116.   CARE has a statutory right to have EPA process its FOIA Requests in a

3   manner that complies with the FOIA and the Agency's regulations implementing

4   the FOIA.  Plaintiff's rights in this regard were violated when EPA failed to abide

5   by statutory and regulatory procedures when EPA: (1) improperly invoked the

6   "unusual circumstances" exception to the FOIA's twenty-day determination

7   deadline for Request Two; and (2) improperly applied its regulations in evaluating

8   claims of business confidentiality under 5 U.S.C. § 552(b)(4).

9   117.   First, when an agency invokes the "unusual circumstances" exception to

10   provide itself with an extension to the FOIA's determination deadline that is

11   greater than ten business days, it must provide written notification to the requester

12   that (1) offers the requester an opportunity to limit the scope of the request so that

13   it may be processed within the FOIA's original time limits, or (2) offers the

14   requester an opportunity to arrange with the agency an alternative time frame for

15   processing the request.  5 U.S.C. § 552(a)(6)(B)(ii).  The agency must also make

16   available to the requester its FOIA public liaison, who is tasked to resolve any

17   dispute between the requester and the agency.  *Id*.  The agency must still notify the

18   requester of the expected date on which a final determination will be dispatched.  5

19   U.S.C. § 552(a)(6)(B)(i).  EPA's regulations implementing the FOIA parallel these

20   requirements.  40 C.F.R. § 2.104(d).

FIRST AMENDED COMPLAINT                                                    25

118.   EPA invoked the unusual circumstances exception for Request Two on March 5, 2013, one day after its original twenty-day determination deadline had passed, thereby waiving its ability to lawfully invoke the exception.

119.   EPA claimed that it was giving itself a ten-day extension to the determination deadline.  However, the new deadline specified in EPA's notice improperly attempted to give the Agency a twelve business-day extension.

120.   This longer extension triggered the FOIA's heightened requirements for invoking unusual circumstances under 5 U.S.C. § 552(a)(6)(B)(ii).

121.   EPA's March 5, 2013 notice did not provide CARE with an opportunity to narrow the scope of Request Two.

122.   EPA's March 5, 2013 notice did not provide CARE with the opportunity to arrange a different timeframe for the processing of Request Two.

123.   EPA's March 5, 2013 notice did not make EPA's FOIA Public Liaison available to CARE, whom CARE would have used to help resolve this dispute.

124.   Second, EPA violated its own FOIA regulations when the Agency failed to properly follow its rules for dealing with claims of confidential business information under 5 U.S.C. § 552(b)(4).

125.   When there is a FOIA request pending that could implicate confidential business information, EPA's regulations require the Agency to first ask a potentially affected business whether it intends to claim any responsive

1    information as confidential.  The business has three working days to respond to

2    EPA.  40 C.F.R. § 2.204(b), (c).  If the business responds, then EPA is required to

3    evaluate the business's response and make an "initial" confidentiality

4    determination.  40 C.F.R. § 2.204(d).  If EPA makes an affirmative, "initial"

5    confidentiality determination, then EPA must inform a requester of that fact.  EPA

6    is then required to "promptly furnish each business a written notice" that the

7    Agency is seeking comments from that affected business in order to substantiate

8    the confidentiality claim.  40 C.F.R. § 2.204(d), (e).  A business has a 15-working

9    day window to provide EPA with the information necessary to substantiate its

10   claim; failure to respond within that window constitutes waiver of the

11   confidentiality claim.  *Id*.; *see also* 40 C.F.R. § 2.205(d)(1).  Only in

12   "extraordinary circumstances" may the comment window be enlarged absent

13   consent from the requester.  40 C.F.R. § 2.205(b)(2).

14   126.    According to EPA's regulations, that comment period should have started to

15   run no later than the date of EPA's April 30, 2013 letter, if not earlier.  *See* 40

16   C.F.R. § 2.204(d)(1) (the notice of opportunity to submit comments to affected

17   businesses must be submitted at the same time as notice to the Requester that

18   responsive information may be exempt as confidential business information).  In

19   any event, CARE has never received information from EPA about whether

20   comments were submitted or whether EPA's Legal Office had initiated its "final"

FIRST AMENDED COMPLAINT                                                          27

1   confidentiality review.

2   127.   Upon information and belief, EPA made an internal determination, based

3   exclusively on representations made by the dairies subject to the AOC, that records

4   responsive to Request Two contained confidential business information.  Upon

5   information and belief, this determination occurred well before April 30.  As a

6   result, EPA should have asked for comments from the targeted businesses at that

7   earlier time.

8   128.   Upon information and belief, EPA did not properly abide by its own

9   regulations in evaluating whether information responsive to Request Two was

10   exempt from disclosure under the confidential business information exemption.

11   129.   Upon information and belief, EPA did not receive any comments from

12   potentially affected businesses within the initial, three-business day window under

13   40 C.F.R. § 2.204(c)(2)(ii).  Therefore, any claims of confidentiality are waived

14   pursuant to EPA regulation.

15   130.   Upon information and belief, EPA did not make any record of the results of

16   the Agency's initial inquiry to potentially affected businesses, as the Agency was

17   required to do under 40 C.F.R § 2.204(c)(2)(iii).

18   131.   Upon information and belief, EPA never received any substantive comments

19   from potentially affected businesses with the fifteen-day comment period

20   contemplated under 40 C.F.R § 2.204(e).  Therefore, any claims of confidentiality

FIRST AMENDED COMPLAINT                                                          28

1  are waived pursuant to EPA regulation.

2  132.   Based on the nature of CARE's organizational activities, CARE will continue

3  to employ the FOIA's provisions in information requests to EPA in the foreseeable

4  future.  These activities will be adversely affected if EPA is allowed to continue to

5  respond and process FOIA requests in a manner that is inconsistent with the FOIA's

6  statutory requirements and the Agency's implementing regulations.

7  133.   Unless enjoined and made subject to a declaration of CARE's legal rights by

8  this Court, EPA will continue to violate the rights of CARE to receive public

9  records under the FOIA.

10  ## COUNT III

11  ### UNLAWFUL WITHHOLDING OF RECORDS RESPONSIVE TO
### REQUEST TWO UNDER 5 U.S.C. § 552(B)(7)(A)

12
13  134.   The allegations made in all preceding paragraphs are realleged and
incorporated by reference herein.

14
15  135.   CARE has a statutory right to have EPA process its FOIA requests in a
manner that complies with the FOIA.  CARE's rights in this regard were violated

16
17  when EPA withheld records responsive to Request Two as being exempt from
disclosure under 5 U.S.C. § 552(b)(7)(A).

18
19  136.   The FOIA requires federal agencies to promptly disclose all records
responsive to a FOIA request unless one of nine statutory exemptions applies.

20
These nine exemptions are narrowly construed, and it is the Agency's burden to

FIRST AMENDED COMPLAINT                                              29

1   show that they are properly applied to the withheld records.

2   137.   One of the FOIA's exemptions allows agencies to withhold from disclosure

3   "records or information compiled for law enforcement purposes, but only to the

4   extent that the production of such law enforcement records or information…could

5   reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. §

6   552(b)(7)(A).

7   138.   EPA withheld 300 pages of records responsive to Request Two under 5

8   U.S.C. § 552(b)(7)(A).

9   139.   EPA's withholding of responsive records under 5 U.S.C. § 552(b)(7)(A) is

10  unlawful, and the complete records must be disclosed to CARE.

11  140.   The Agency characterized its unlawful withholding as an "interim denial" of

12  Request Two, requiring CARE to file an administrative appeal with EPA on this

13  issue.

14  141.   EPA received CARE's administrative appeal on May 30, 2013.

15  142.   Under the FOIA, EPA had twenty business days to resolve CARE's appeal.

16  143.   EPA's deadline for resolving CARE's appeal was June 27, 2013.

17  144.   EPA did not resolve CARE's appeal on or before June 27, 2013.

18  145.   Under the FOIA, CARE has constructively exhausted its administrative

19  remedies consequent to EPA's failure to resolve CARE's administrative appeal

20  within the twenty-day deadline.  5 U.S.C. § 552(a)(6)(B)(ii).

FIRST AMENDED COMPLAINT                                                    30

146.   Based on the nature of CARE's organizational activities, CARE will continue to employ the FOIA's provisions in information requests to EPA in the foreseeable future.  These activities will be adversely affected if EPA is allowed to continue violating the FOIA's disclosure exemptions.

147.   Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, EPA will continue to violate the rights of Plaintiff to receive public records under the FOIA.

## COUNT IV

### UNLAWFUL WITHHOLDING OF RECORDS RESPONSIVE TO REQUEST TWO UNDER 5 U.S.C. § 552(B)(4)

148.   The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

149.   CARE has a statutory right to have EPA process its FOIA requests in a manner that complies with the FOIA.  CARE's rights in this regard were violated when EPA unlawfully withheld records responsive to Request Two under 5 U.S.C. § 552(b)(4).

150.   The FOIA requires federal agencies to promptly disclose all records responsive to a FOIA request unless one of nine statutory exemptions applies.  One of those exemptions allows agencies to withhold from public disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

FIRST AMENDED COMPLAINT                                                          31

151.   In its April 30, 2013 communication, EPA stated that it was withholding records responsive to Request Two as confidential business information pursuant to 5 U.S.C. § 552(b)(4).

152.   Upon information and belief, the confidential business information exemption at 5 U.S.C. § 552(b)(4) does not apply to the information being withheld from Plaintiff in this case and thus FOIA's Exemption 4 is inapplicable to bar the release of the information.

153.   Based on the nature of CARE's organizational activities, CARE will continue to employ the FOIA's provisions in information requests to EPA in the foreseeable future.  These activities will be adversely affected if EPA is allowed to continue violating the FOIA's disclosure exemptions.

154.   Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, EPA will continue to violate the rights of Plaintiff to receive public records under the FOIA.

## COUNT V

### PATTERN, PRACTICE, AND/OR POLICY OF UNREASONABLY WITHHOLDING RECORDS RESPONSIVE TO FOIA REQUESTS

155.   The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

156.   CARE has a statutory right to have EPA process its FOIA requests in a manner that complies with the FOIA.  CARE's rights in this regard were violated

FIRST AMENDED COMPLAINT                                                                 32

1    and continue to be violated by EPA's pattern, practice, and/or policy of

2    unreasonably withholding records responsive to FOIA requests.

3    157.    First, EPA has established a pattern, practice, and/or policy of unreasonably

4    delaying production of records responsive to FOIA requests based on justifications

5    that are not cognizable under the FOIA.

6    158.    With regard to Request One, EPA admitted to CARE that it knew where

7    responsive records were located and that the information contained in those records

8    was not exempt from disclosure under the FOIA's nine disclosure exemptions.

9    159.    Pursuant to the statute, EPA was thus required to "promptly" make those

10   records available to CARE.  5 U.S.C. § 552(a)(3)(A).

11   160.    Rather than abide by its statutory duties, EPA informed CARE that it was

12   withholding these records until the Agency completed its negotiations with the

13   dairies and executed the AOC.

14   161.    EPA's stated rationale for its withholding was that disclosure of the records

15   prior to the signing of the AOC would potentially anger the dairies subject to the

16   AOC and possibly disrupt the ongoing settlement negotiations that led to the

17   creation of the AOC.

18   162.    There is no provision in the FOIA that authorizes EPA to delay production

19   of public records based on concerns that such disclosure would anger third parties

20   or disrupt ongoing Agency settlement negotiations with those third parties.

FIRST AMENDED COMPLAINT                                                    33

163.   Such a withholding demonstrates misconduct and bad faith on the part of EPA, as it deliberately and intentionally violated federal law by withholding records responsive to Request One based on justifications not cognizable under the statute.

164.   EPA also unreasonably delayed production of records responsive to Request Two.  Request Two was submitted to the Agency on February 1.  Some responsive records were not provided to CARE until May 2.  This unreasonable delay in providing discrete, readily identifiable records is entirely improper.

165.   To date, EPA has yet to provide CARE with a legally adequate determination resolving Request Two.  This unreasonable delay in providing a final determination on Request Two is entirely improper.

166.   These unreasonable delays in responding to CARE's FOIA Requests, especially when based on justifications that are not cognizable under the FOIA, constitutes a pattern, practice and/or policy of unreasonably delaying production of responsive records.  CARE's interests in timely obtaining complete public records will continue to be prejudiced if such a pattern, practice, and/or policy is allowed to continue.

167.   Second, EPA has established a pattern, practice, and/or policy of unreasonably withholding responsive records consequent to the Agency's failure to independently and meaningfully evaluate whether records responsive to FOIA

FIRST AMENDED COMPLAINT                                                    34

1   requests are exempt from disclosure under 5 U.S.C. § 552(b)(4), the "confidential

2   business information" exemption.

3   168.   Concerning Request Two, upon information and belief, EPA failed to

4   conduct any meaningful, independent review of the information claimed exempt by

5   the Agency as "confidential business information."

6   169.   The FOIA requires federal agencies to conduct their own, independent

7   review of responsive information to determine whether that information is exempt

8   from disclosure.

9   170.   Upon information and belief, EPA determined that some records responsive

10  to Request Two were exempt from disclosure as "confidential business

11  information" simply because the dairies subject to the AOC had represented to

12  EPA that the information constituted "confidential business information."

13  171.   Upon information and belief, EPA failed to follow or implement its own

14  regulations requiring it to undertake an independent assessment of an exemption

15  claim based on confidential business information and instead accepted, without

16  verification, the dairies' assertion that the responsive records contained

17  confidential business information.

18  172.   This decision by EPA demonstrates that the Agency has acted in bad faith by

19  deliberately withholding responsive records as exempt from disclosure based

20  solely on input from third parties.  As a result, Plaintiff's timely access to pubic

FIRST AMENDED COMPLAINT                                                    35

1  records has been and continues to be unreasonably delayed by EPA.

2  173.   This decision by EPA also demonstrates that the Agency has adopted a

3  pattern, practice, and/or policy of failing to conduct meaningful, independent

4  review of claims that information responsive to a records request is exempt from

5  disclosure under 5 U.S.C. § 552(b)(4).  Instead, upon information and belief, EPA

6  simply accepts the representations made by third parties, such as the dairies in this

7  case, that the responsive records contain confidential business information and

8  cannot be publicly released.

9  174.   This pattern, practice, and/or policy has been and is continuing to be

10 implemented by EPA in direct contravention to the requirements of the FOIA,

11 which subjects Plaintiff to unreasonable delay in obtaining records responsive to its

12 current and future FOIA requests.

13 175.   CARE will continue to be subject to EPA's illegal pattern, practice, and/or

14 policy.  CARE has submitted two subsequent FOIA requests to EPA, one of which

15 is currently pending (EPA request number "EPA-R10-2013-008157").  CARE

16 intends to make further FOIA requests to EPA in the future.

17 176.   Unless enjoined and made subject to a declaration of Plaintiff's legal rights

18 by this Court, EPA will continue to implement these improper patterns, practices,

19 and/or policies, which violate the rights of Plaintiff to receive public records under

20 the FOIA.

FIRST AMENDED COMPLAINT                                                    36

# COUNT VI

## VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT

177.   The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

178.   EPA has failed to act in an official capacity under color of legal authority by violating the requirements of the FOIA.  In particular, EPA: (1) failed to issue a timely final determination on Request Two; (2) failed to abide by statutory and regulatory procedures in responding to and processing Requests One and Two; and (3) unlawfully withheld records responsive to Request Two under Exemptions 4 and 7 of the FOIA.

179.   EPA has unlawfully withheld agency action by failing to comply with the mandates of FOIA consequent to its failure and refusal to issue a timely final determination on Request Two, failed to abide by statutory and regulatory procedures in responding to and processing both Requests One and Two, and unlawfully withheld records responsive to Request Two under Exemptions 4 and 7 of the FOIA.

180.   CARE has been adversely affected and aggrieved by EPA's failure to comply with the mandates of the FOIA and the APA.  EPA's failures have injured Plaintiff's interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA.

181.   CARE has suffered a legal wrong as a result of EPA's failure to comply with the mandates of the FOIA.  EPA's failures have injured Plaintiff's interests in public oversight of governmental operations and constitute a violation of Defendant's statutory duties under the APA.

182.   EPA's failure and refusal to issue a timely final determination on Request Two, failure to abide by statutory and regulatory procedures in responding to and processing both Requests One and Two, and unlawful withholding of records responsive to Request Two under Exemptions 4 and 7 of the FOIA constitutes agency action unlawfully withheld and unreasonably delayed and is therefore actionable pursuant to the APA, 5 U.S.C. § 706(1).

183.   Alternatively, EPA's failure and refusal to issue a timely final determination on Request Two, failure to abide by statutory and regulatory procedures in responding to and processing both Requests One and Two, and unlawful withholding of records responsive to Request Two are in violation of the FOIA's statutory mandates and are therefore arbitrary, capricious, or an abuse of discretion and not in accordance with law and are therefore actionable pursuant to the APA, 5 U.S.C. § 706(2).

184.   CARE is entitled to judicial review under the Administrative Procedure Act 5 U.S.C. §§ 702, 706.

185.   CARE is entitled to costs of disbursements and costs of litigation, including

FIRST AMENDED COMPLAINT                                                                 38

1    reasonable attorney and expert witness fees, under the Equal Access to Justice Act,

2    28 U.S.C. § 2412.

3                              **RELIEF REQUESTED**

4     WHEREFORE, Plaintiff prays that this Court:

5         **1.**      Order EPA to promptly provide CARE all of the information sought

6    in this action and to immediately disclose the requested documents.

7         **2.**      Declare EPA's failure to make a timely and legally adequate

8    determination on Request Two to be unlawful under the FOIA, 5 U.S.C. §

9    552(a)(6)(A)(i), agency action unlawfully withheld and unreasonably delayed, 5

10   U.S.C. § 706(1), and/or agency action that is arbitrary, capricious, an abuse of

11   discretion, and not in accordance with law, 5 U.S.C. § 706(2).

12        **3.**      Declare EPA's failure to abide by statutory and regulatory procedures

13   in responding to and processing CARE's FOIA Requests to be unlawful under the

14   FOIA, agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. §

15   706(1), and/or agency action that is arbitrary, capricious, an abuse of discretion,

16   and not in accordance with law, 5 U.S.C. § 706(2).

17        **4.**      Declare EPA's withholding of records responsive to Request Two to

18   be unlawful under 5 U.S.C. § 552(b)(7)(A), agency action unlawfully withheld and

19   unreasonably delayed, 5 U.S.C. § 706(1), and/or agency action that is arbitrary,

20   capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C. §

FIRST AMENDED COMPLAINT                                                          39

1    706(2), and Order EPA to promptly provide the 300 pages of withheld material to

2    CARE.

3      **5.** Declare EPA's withholding of records responsive to Request Two to

4    be unlawful under 5 U.S.C. § 552(b)(4), agency action unlawfully withheld and

5    unreasonably delayed, 5 U.S.C. § 706(1), and/or agency action that is arbitrary,

6    capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C. §

7    706(2), and Order EPA to promptly provide all the withheld material to CARE.

8      **6.** Declare EPA's pattern, practice, and/or policy of unreasonably

9    withholding records responsive to FOIA requests to be illegal under the FOIA.

10      **7.** Issue appropriate injunctive relief prohibiting EPA from continuing

11    its illegal pattern, practice, and/or policy of unlawfully and unreasonably

12    withholding records responsive to FOIA requests, including a recommendation that

13    Special Counsel investigate this matter pursuant to 5 U.S.C. § 552(a)(4)(F)(i).

14      **8.** Award CARE its reasonable attorneys fees and costs pursuant to 5

15    U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412.

16      **9.** Grant such other and further relief as the Court may deem just and

17    proper.

18    ///

19    ///

20    ///

FIRST AMENDED COMPLAINT         40

Respectfully submitted this 19th Day of July, 2013.

s/ Andrea Rodgers Harris
ANDREA RODGERS HARRIS
WSBA #38683
The Law Office of Andrea Rodgers
Harris
2907 S. Adams St.
Seattle, WA 98108
Tel. 206.696.2851
E-mail: akrodgersharris@yahoo.com

*Counsel for Plaintiff*

s/ Daniel C. Snyder
DANIEL C. SNYDER, *pro hac vice application*
*forthcoming*
OSB# 105127
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel. 541.344.3505
E-mail: dan.tebbuttlaw@gmail.com

*Counsel for Plaintiff*

**From:** Daniel Snyder <dan.tebbuttlaw@gmail.com>
**Subject:** FOIA Request - Yakima, WA Groundwater Sampling Results
**Date:** January 29, 2013 4:48:22 PM PST
**To:** r10.foia@epa.gov
**Cc:** Charlie Tebbutt <charlie.tebbuttlaw@gmail.com>

---

To Whom It May Concern:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, I am hereby requesting that EPA provide electronic copies of all preliminary and/or final sampling results of the groundwater sampling that occurred in the Yakima Valley between December, 2012 to the present. EPA R10's website entitled "Lower Yakima Valley Groundwater" contains the following paragraph about the specific sampling information that I am enquiring about:

"*As a follow-up to our 2010 sampling, in December 2012 we installed several groundwater monitoring wells in the vicinity of the Yakima Valley dairies that were included in our earlier study. The wells were installed to increase our understanding of the hydrogeology - including to confirm the direction of groundwater flow in the shallow drinking water aquifer in the vicinity of the dairies. The wells were also sampled for nitrate to provide more information about the concentrations of nitrate in the drinking water in the vicinity of the dairies.*

*We're currently working on a report on this monitoring well installation and sampling effort.*"

I am concurrently filing this same FOIA request using EPA's "FOIAonline" system.

Thank you,

/s/ Daniel C. Snyder

Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, OR 97401
Ph: 541-344-3505

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law as attorney-client and work-product confidential or otherwise confidential communications. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or other use of a transmission received in error is strictly prohibited. If you have received this transmission in error, immediately notify us at the telephone number above.

From: Daniel Snyder <dan.tebbuttlaw@gmail.com>
Subject: Freedom of Information Act Request
Date: February 1, 2013 4:17:13 PM PST
To: r10.foia@epa.gov

To Whom It May Concern:

This is a Freedom of Information Act Request made pursuant to 5 U.S.C. § 552 *et seq.* On behalf of the Community Association for Restoration of the Environment, I am requesting EPA to provide electronic copies of all communications between representatives of the following Washington dairies and/or their agents, and EPA Region 10 personnel, including but not limited to Region 10 Administrator Dennis McLerran, between September 1, 2012 to the present. The "representatives" and "agents" of the following dairies may include (but are not limited to) trade organizations, such as the Washington State Dairy Federation, the Dairy Farmers of Washington, and the Washington State Dairy Council, as well as attorneys from the law firms of Foster Pepper PLLC, K&L Gates LLP, Perkins Coie LLP, and/or the Halverson Northwest Law Group. The dairies in question are:

1) D&A Dairy, located at 3001 Dekker Road, Outlook, WA.
2) George DeRuyter & Son Dairy, located at or near 5121 Dekker Road, Outlook, WA.
3) Cow Palace, LLC, located at 1631 N. Liberty Road, Granger, WA.
4) Liberty Dairy, LLC, located at 4300 Beam Road, Zillah, WA
5) Henry Bosma Dairy, located at 1271 N. Liberty Road, Granger, WA
6) R & M Haak and Sons Dairy, located at 4080 Washout Road, Sunnyside, WA.

Please inform this office if the costs of responding to this request are anticipated to exceed $100.

Thank you,

Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, OR 97401
Ph: 541-344-3505

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law as attorney-client and work-product confidential or otherwise confidential communications. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or other use of a transmission received in error is strictly prohibited. If you have received this transmission in error, immediately notify us at the telephone number above.

From:    Daniel Snyder <dan.tebbuttlaw@gmail.com>
Subject:    Phone call with Allyn Stern
Date:    February 28, 2013 10:12:40 AM PST
To:    Daniel Snyder <dan.tebbuttlaw@gmail.com>

I spoke with Allyn Sterm at approx. 10 AM on Feb 28.  She wanted an extension on the FOIA request.  We discussed EPA's determination deadline violation.  She told me that EPA could invoke unusual circumstances to give the agency another 10 days; I disagreed, stating that they needed to timely invoke UC before the 20-day timer ran.  She also told me that EPA is not reviewing the factual information for exemptions, but rather to just "review" it.  When pressured, she told me that the review was being done by higher ups.  I told her that was no reason to delay production of the results.  She then told me that EPA's fear was that if they release the results, it would "enflame" the dairies and potentially throw off their settlement negotiations.

I told her about the impending Press Release and complaint.  She expressed that she knew we could file a complaint, get atty fees, etc, but that wouldn't get us the data sooner.  I told her we would delay action IF EPA could agree, in writing, to a date certain by which the information would be produced.  She explained that EPA was hoping to get the info released to  us next week, but couldn't promise anything.  I said we need something in writing, date certain, enforceable.

/s/ Daniel C. Snyder
Feb 28, 2013 at 10:12 AM.


Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, OR 97401
Ph: 541-344-3505


This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law as attorney-client and work-product confidential or otherwise confidential communications.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or other use of a transmission received in error is strictly prohibited.  If you have received this transmission in error, immediately notify us at the telephone number above.

From:    "Magorrian, Matthew" <Magorrian.Matthew@epa.gov>
Subject:  Interim Response Regarding EPA FOIA Request No. EPA-R10-2013-003224
Date:    February 28, 2013 7:43:39 PM PST
To:     "dan.tebbuttlaw@gmail.com" <dan.tebbuttlaw@gmail.com>

---

Requester: Mr. Daniel C. Snyder (dan.tebbuttlaw@gmail.com)
Organization: Law Offices of Charles M. Tebbutt, P.C.

This is concerning your Freedom of Information Act (FOIA) request regarding FOIA No. EPA-R10-2013-003224.

Pursuant to 40 C.F.R.  2.104(d), an extension of time required to comply with your request is necessary. The reason(s) for the extension:

_____    The need to search for and collect the requested records from offices that are physically distant form this office.

_____    The need to search for, collect and appropriately examine a voluminous amount of separate and distinct records involved in your request.

_X___    The need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices having a substantial subject-matter interest in your request.

The new due date for disclosure determination to your FOIA request is ten days from today, **March 14, 2013**. For an update on the status of your request, please call Sharon Buza at (206) 553-2146.

This is an interim response to FOIA request number EPA-R10-2013-003224.

**Matthew Magorrian |** FOIA Request Coordinator

**U.S. Environmental Protection Agency | Region 10**
D: (206) 553-6284 | F: (206) 553-1809

From:   Charlie Tebbutt <charlie.tebbuttlaw@gmail.com>
Subject:  Yakima Valley data FOIA
Date:   March 5, 2013 3:40:40 PM PST
To:   Stern.allyn@Epamail.epa.gov
Cc:   Daniel C Snyder <dan.tebbuttlaw@gmail.com>, Elisabeth Holmes
       <eholmes@centerforfoodsafety.org>, Jessica Culpepper <jculpepper@publicjustice.net>, Jim Hecker
       <JHECKER@publicjustice.net>

---

Dear Ms. Stern:

Dan Snyder and I had several conversations with you by phone on Thursday, February 28, concerning our clients'
FOIA request to EPA.  As you know, that FOIA request  was submitted to EPA  on January 29, 2013, and sought
only the sampling and analysis information EPA obtained sometime in December, 2012, and from its labs in mid-
January, from wells located near the "dairy cluster" in the lower Yakima valley.   We received an acknowledgment of
EPA's receipt of that request on January 29, which assigned the request tracking number EPA-R10-2013-003224.
Under the FOIA, EPA was obligated to provide us with its determination on the request by February 27, 2013
(twenty business days, excluding one federal holiday).  It has failed to do so.

During our conversations, you informed us that (1) EPA would not issue a timely determination; (2) EPA would not
produce the requested sampling information until (at least) Wednesday, March 6; (3) that EPA was not reviewing the
information for any exemptions; and (4) EPA was invoking "unusual circumstances" to give itself an additional ten
business days to respond to the request, allegedly because EPA needed to consult "with another agency or EPA
offices having a substantial subject-matter interest" in the request.  If this does not conform with your recollection of
our conversations, please let us know in writing immediately.

We are dismayed by EPA's reluctance to abide by the requirements of the FOIA.  The isolated, readily identifiable
information we have requested concerns *only* facts - facts that are public information designed to help the public
know about threats to the public health and  environment  of the lower Yakima valley.  This information should have
been produced in a timely fashion.  Instead, it appears that EPA has made a deliberate choice to conceal this
information pending resolution of its settlement negotiations with the offending dairies.  There is no legitimate basis
for invoking "unusual circumstances" in this matter.  Such actions by EPA unfortunately demonstrate that the Agency
is more concerned with appeasing the dairy lobby than protecting the public's health and its right to access
government records.

You asserted on the phone that EPA received our request on January 30, one day later than that contained in the
written acknowledgment we received on the 29th.  For purposes of FOIA's twenty day determination deadline, we
reasonably relied upon EPA's acknowledgment of our FOIA request as the beginning of the twenty day timer.  EPA's
own regulations support this reliance.  40 C.F.R. § 2.102(a) states that a FOIA request "will be considered received
as of the date it is received by the correct FOI office."  Section 2.104(b) of that same regulation states that, "on
receipt of a request, the FOI  office ordinarily will send a written acknowledgment advising you of the date it was
received and of the processing number assigned to the request for future reference."  In this instance, we submitted
a FOIA to Region 10, which is clearly "the correct FOI office."  Pursuant to EPA's regulations, Region 10 was
required to send us "written acknowledgment" of the date the request was "received."  That acknowledgment was
sent out on January 29, the same day our request was made.  As such, the date of "receipt" is indisputably January
29, not some other date that we were never informed of prior to our phone conversations.

Because our request was "received" by EPA on January 29, the twenty day determination deadline ran on February
27, 2013, as we have informed you.  This makes EPA's invocation of unusual circumstances on February 28
improper and untimely under the statute.

You also promised that the information would be disclosed to our clients on Wednesday, March 6.  We hereby inform

you that, if we do not receive the information as promised, we will file a complaint against EPA in federal district court.  That complaint will expressly allege that EPA has acted arbitrarily and capriciously, and in fact willfully, in withholding the requested documents, specifically asking the Court to refer the matter to Special Counsel, as contemplated by 5 U.S.C. § 552(a)(4)(F).  The complaint will also seek immediate disclosure of the requested information, an explanation from EPA as to why it was withholding purely factual information in violation of the statute, and attorneys fees and costs.  Be advised that we will also seek discovery against EPA, including depositions of the relevant decision-makers.

Sincerely,
Charlie Tebbutt
Attorneys for CARE and CFS


--
PLEASE NOTE NEW ADDRESS!

Charlie Tebbutt
Law Offices of Charles M. Tebbutt, P.C
941 Lawrence St.
Eugene, OR 97401
Ph: 541-344-3505
Fax: 541-344-3516
charlie.tebbuttlaw@gmail.com
Website: http://charlietebbutt.com

**From:** "Washington, Audrey" <Washington.Audrey@epa.gov>
**Subject:** FOIA 2013-003302 INTERIM RESPONSE
**Date:** March 5, 2013 3:16:38 PM PST
**To:** "dan.tebbuttlaw@gmail.com" <dan.tebbuttlaw@gmail.com>

Hi Daniel,

This is concerning your Freedom of Information Act (FOIA) request regarding FOIA No. EPA-R10-2013-003302.

Pursuant to 40 C.F.R. 2.104(d), an extension of time required to comply with your request is necessary. The reason(s) for the extension:

_____    The need to search for and collect the requested records from offices that are physically distant form this office.

_____    The need to search for, collect and appropriately examine a voluminous amount of separate and distinct records involved in your request.

  X____    The need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices having a substantial subject-matter interest in your request.

The new due date for disclosure determination to your FOIA request is ten days from today, **March 21 , 2013**. For an update on the status of your request, please call me at 206-553-0523.

This is an interim response to FOIA request number EPA-R10-2013-003302.



Sarah Matsumoto <matsumoto.tebbuttlaw@gmail.com>

## Fwd: FOIA 2013-003302 INTERIM RESPONSE

**Daniel Snyder** <dan.tebbuttlaw@gmail.com>                Thu, Jun 27, 2013 at 11:48 AM
To: Sarah Matsumoto <matsumoto.tebbuttlaw@gmail.com>

Here it is.

Begin forwarded message:

> **From:** Daniel Snyder <dan.tebbuttlaw@gmail.com>
> **Subject: Re: FOIA 2013-003302 INTERIM RESPONSE**
> **Date:** March 5, 2013 3:42:13 PM PST
> **To:** "Washington, Audrey" <Washington.Audrey@epa.gov>
> **Bcc:** Charlie Tebbutt <charlie.tebbuttlaw@gmail.com>, Elisabeth Holmes
> <eholmes@centerforfoodsafety.org>
>
> Dear Ms. Washington,
>
> Thank you for the correspondence.  According to an acknowledgment e-mail from EPA, this request was
> received by the Agency on February 1, 2013.  Under EPA's regulations, such an acknowledgment is
> expressly intended to inform a Requester of the date that EPA received a FOIA request.  40 C.F.R. §
> 2.102(a) (request considered received as of date request received by correct FOI office); 40 C.F.R. §
> 2.104(b) (EPA sends out acknowledgment notices advising requesters of the date a request was
> received).  By our count, the twenty-day determination deadline expired yesterday, Feb. 4.  This makes
> EPA's invocation of unusual circumstances untimely under the statute.
>
> Your e-mail states that EPA is requesting additional time to issue a determination *solely* because it
> needs to consult with other agencies or EPA offices.  Can you please specify what other EPA offices or
> agencies have a "substantial subject-matter interest" in this particular request?  Additionally, we
> understand from your message that EPA is *not* requesting more time to locate responsive records or to
> review those records for disclosure exemptions.  If this is incorrect, please let me know in writing.
>
> Finally, you state that the new determination deadline is March 21, 2013.  Ten business days from
> today's date is March 19, not March 21.  Without waiving any legal arguments concerning EPA's
> improper invocation of unusual circumstances, please confirm that March 19, 2013 will be the actual
> date upon which EPA will issue a determination.
>
> Thank you,
>
> Daniel C. Snyder
> Law Offices of Charles M. Tebbutt, P.C.
> 941 Lawrence Street
> Eugene, OR 97401
> Ph: 541-344-3505
>
>
> This message is intended only for the use of the individual or entity to which it is
> addressed and may contain information that is privileged, confidential and exempt
> from disclosure under applicable law as attorney-client and work-product confidential
> or otherwise confidential communications.  If the reader of this message is not
> the intended recipient, you are hereby notified that any dissemination, distribution, or

copying of this communication or other use of a transmission received in error is strictly prohibited.  If you have received this transmission in error, immediately notify us at the telephone number above.

On Mar 5, 2013, at 3:16 PM, Washington, Audrey wrote:

Hi Daniel,

This is concerning your Freedom of Information Act (FOIA) request regarding FOIA No. EPA-R10-2013-003302.

Pursuant to 40 C.F.R.  2.104(d), an extension of time required to comply with your request is necessary. The reason(s) for the extension:

_____    The need to search for and collect the requested records from offices that are physically distant form this office.

_____    The need to search for, collect and appropriately examine a voluminous amount of separate and distinct records involved in your request.

_X____    The need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices having a substantial subject-matter interest in your request.

The new due date for disclosure determination to your FOIA request is ten days from today, **March 21 , 2013**. For an update on the status of your request, please call me at 206-553-0523.

This is an interim response to FOIA request number EPA-R10-2013-003302.

Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, OR 97401
Ph: 541-344-3505

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law as attorney-client and work-product confidential or otherwise confidential communications.  If the reader of this message is not the intended recipient, you are

hereby notified that any dissemination, distribution, or copying of this communication or other use of a transmission received in error is strictly prohibited.  If you have received this transmission in error, immediately notify us at the telephone number above.

# Law Offices of Charles M. Tebbutt, P.C.
**941 Lawrence Street**
**Eugene, OR 97401**
**Ph: 541-344-3505 Fax: 541-344-3516**

March 26, 2013

---

Audrey Washington                    Allyn Stern
FOIA Request Coordinator             Regional Counsel
EPA Region 10                        EPA Region 10
Washington.Audrey@epa.gov            Stern.Allyn@epamail.epa.gov

**Via E-Mail Only**

Dear Ms. Washington:

     This letter concerns FOIA Request No. EPA-R10-2013-003302, received by EPA on February 1, 2013.  On March 5, 2013, you informed this office that EPA was invoking an extension of the twenty-day determination deadline for this request under 40 C.F.R. 2.104(d).  In particular, you asserted that EPA required an additional ten business days for the "need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices having a substantial subject-matter interest" in the identified FOIA request.  Your e-mail stated that EPA's determination deadline would be provided to this office on March 21, 2013.

     I responded to your e-mail on March 5.  In that response, I informed you that EPA's twenty-day determination deadline had expired prior to the invocation of unusual circumstances, negating EPA's ten-day extension.  Furthermore, I explained that ten business days from March 5 was not March 21, but rather March 19.  I asked you to confirm that March 19 would be the new determination deadline.  Neither you nor anyone else ever responded to that correspondence.

     It is now five days past March 21, 2013.  No determination has been provided.  Please be advised that we will file a lawsuit against EPA in Federal District Court for failure to provide a timely determination on this FOIA request unless this office receives an actual determination within five business days of today's date.  We await your decision.

Sincerely,

/s/ Daniel C. Snyder

Daniel C. Snyder, OSB #105127
Law Offices of Charles M. Tebbutt, P.C.
dan.tebbuttlaw@gmail.com



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 10**
1200 Sixth Avenue, Suite 900
Seattle, WA 98101-3140

OFFICE OF
REGIONAL COUNSEL

MAR 2 8 2013

Mr. Daniel Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, Oregon  97401

Re:    First Interim Response
       Freedom of Information Act Request EPA-R10-2013-003302

Dear Mr. Snyder:

This is an interim response to your Freedom of Information Act (FOIA) request dated February 1, 2013, for all communication between the U.S. Environmental Protection Agency, Region 10 (EPA) and six named dairies and their agents from September 1, 2012 to February 1, 2013. EPA refers to this FOIA request by FOIA No. EPA-R10-2013-003302.

A subset of the documents that you requested have been uploaded to FOIAonline at: https://foiaonline.regulations.gov/foia/action/public/home. On the FOIAonline homepage, type in "EPA-R10-2013-003302" in the search box in the upper right hand corner. Click on the link to FOIA number EPA-R10-2013-003302, scroll down to the section titled "Released Records" then select the files you want to download. You will also find records responsive to your request in FOIAonline in response to FOIA No. EPA-R10-2013-002664.

You provided assurance of payment of up to $100. EPA estimates that the cost of providing the information requested will be $500. Please provide us with your assurance of payment for this amount so that we can complete our response to your request. Upon receipt of the assurance of payment, EPA will continue to process your request and will provide you with responsive records as they become available. The final response package will include a bill and final billing instructions if applicable.

This is interim response to FOIA request number EPA0R10-2013-003302. If you have any questions regarding the status of this request, please contact Jennifer MacDonald at 206-553-8311 or by email at MacDonald.Jennifer@epa.gov.

Sincerely,

R. David Allnutt, Manager
Multi-Media Unit 3

FIRST AM. COMPLAINT - EX. 9                                                      53



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 10**
1200 Sixth Avenue, Suite 900
Seattle, WA 98101-3140

OFFICE OF
REGIONAL COUNSEL

APR 3 0 2013

Daniel Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, Oregon  97401

Re:     Freedom of Information Act Request EPA-R10-2013-003302

Dear Mr. Snyder:

This is an interim response to your Freedom of Information Act (FOIA) request dated
February 1, 2013, for all communications between the U.S. Environmental Protection Agency,
Region 10, (EPA), and six named dairies and their agents from September 1, 2012 to February
1, 2013. EPA refers to this FOIA request as FOIA No EPA-R10-2013-003302.

On March 28, 2013, EPA sent to you through FOIAonline the First Interim Response through
which EPA disclosed some of the responsive records.

Additional documents have since been uploaded to FOIAonline.  You can reach those
documents by connecting to this link:
https://foiaonline.regulations.gov/foia/action/public/home

On the FOIAonline homepage, type in "EPA-R10-2013-003302" in the search box in the upper
right hand corner.  Click on the link to FOIA number EPA-R10-2013-003302, scroll down to the
section titled "Released Records" then select the files you want to download.

We are unable to provide you with records that have been claimed confidential and may
contain trade secrets or commercial or financial information which is exempt from disclosure
under 5 U.S.C. § 552(b)(4).  Pursuant to 40 C.F.R. § 2.204, your request is being initially denied
because further inquiry by EPA is required before a final determination can be made. We will
consult with the third parties in connection with their business confidentiality claim(s)
covering these records and the Office of Regional Counsel will issue a final confidentiality
determination.

In addition, certain records are being withheld because they concern settlement negotiations
and are exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) as records compiled for law
enforcement purposes, but only to the extent that the release of records could interfere with
enforcement proceedings. These records are communications between EPA and certain dairies
and pertain to settlement negotiations.  The number of pages of records in this category are
approximately 300.

You may appeal this response to the National Freedom of Information Officer, U.S. EPA, FOIA and Privacy Branch, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, D.C. 20460 (U.S. Postal Service Only), FAX: (202) 566-2147, Email: hq.foia@epa.gov.) Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, N.W. If you are submitting your appeal via hand delivery, courier service or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., Room 6416J, Washington, D.C. 20004. Your appeal must be made in writing, and it must be submitted no later than 30 calendar days from the date of this letter. The Agency will not consider appeals received after the 30 calendar day limit. The appeal letter should include the FOIA number listed above. For quickest possible handling, the appeal letter and its envelope should be marked "Freedom of Information Act Appeal."

Per your email communication to Jennifer MacDonald of my office dated April 12, 2013, you have given assurance of payment for up to $500.00. Under the category of "other," you will not be charged for the first 100 pages and two hours of search time; no review time will be charged, as well. The remaining balance after these deductions is billable. EPA will notify you if the cost to produce your request is expected to exceed your assurance of payment.

This is an interim denial response to FOIA request EPA-R10-2013-003302. If you have any questions regarding the status of this request, please contact Jennifer MacDonald at 206-553-8311, or by email at MacDonald.Jennifer@epa.gov.

Sincerely,

Allyn L. Stern, Regional Counsel
Office of Regional Counsel

cc: Stephanie Kercheval, FOIA Coordinator

2

# Law Offices of Charles M. Tebbutt, P.C.
**941 Lawrence Street**
**Eugene, OR 97401**
**Ph: 541-344-3505 Fax: 541-344-3516**

May 24, 2013

National Freedom of Information Officer
United States Environmental Protection Agency
FOIA and Privacy Branch
1200 Pennsylvania Ave. NW (2822T)
Washington, D.C. 20460

Via U.S. Mail, Return Receipt Requested
Via E-mail to hq.foia@epa.gov

**RE:     ADMINISTRATIVE APPEAL OF INITIAL DENIAL OF FOIA REQUEST
EPA-R10-2013-003302**

To Whom It May Concern:

This is an administrative appeal of the "interim" denial of FOIA Request EPA-R10-2013-003302.  A copy of the decision being appealed is attached hereto as Exhibit A.  On behalf of our clients, the Community Association for Restoration of the Environment and the Center for Food Safety (collectively, "Requesters"), we are filing this appeal because the U.S. Environmental Protection Agency ("EPA") has improperly withheld approximately 300 pages of records responsive to the above-referenced request.[1]  An original copy of the request, which was submitted to EPA's FOIA e-mail address and via "FOIAOnline.gov" is attached hereto as Exhibit B.  The requested documents at issue concern EPA's communications with representatives and/or agents of the "Dairy Cluster," a group of dairies[2] that are presently subject to an Administrative Order on Consent, Docket No. SDWA-10-2013-0080 ("AOC").

EPA's justification for the withholding of documents responsive to the request is unsustainable as a matter of law.  EPA claims that the 300 pages were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A), which allows for the withholding of

---

[1] Requesters reserve their right to challenge EPA's other withholdings under 5 U.S.C. § 552(b)(4) until such a time that EPA issues a "final" confidentiality determination, as it stated it shall do in Exhibit A.

[2] The dairy respondents to the AOC are: Cow Palace, LLC; D & A Dairy, LLC; George DeRuyter & Son Dairy, LLC; George & Margaret, LLC; Liberty Dairy, LLC; and Bosma Dairy, LLC.  The request also sought communications between EPA and the R&M Haak Dairy, LLC.  To the extent that EPA has withheld communications with representatives and/or agents of Haak Dairy, that withholding is also improper for the reasons stated herein.

1 / 5

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to interfere with enforcement proceedings[.]"  For the reasons described below, this exemption is inapplicable and the withheld documents must be timely and completely produced.

The purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  "Disclosure, not secrecy, is the dominant objective of [the] FOIA."  *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012) (internal citations omitted).  It is for this reason that the FOIA's nine exemptions are narrowly construed.  *FBI v. Abramson*, 456 U.S. 615, 630 (1982).  It is EPA's burden to demonstrate that any exemption applies to the requested documents.  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).  To justify its withholding, the government must provide tailored reasons in response to a FOIA request, not simply assert boilerplate or conclusory statements.  *Weiner v. FBI*, 943 F.2d 972, 978 (9th Cir. 1991).

Exemption 7 allows EPA to withhold documents gathered for law enforcement purposes, but only to the extent that one of six specified scenarios apply.  5 U.S.C. 552(b)(7)(A)-(F).  The six scenarios specified in the statute contemplate very serious violations of procedural and substantive due process rights (e.g. interference with enforcement proceedings, depriving a person of a fair trial, unwarranted invasion of personal privacy, endangering life or physical safety of an individual).  When evaluated in the overall context of the statutory exemption and its limitations, EPA's claim of exemption (b)(7)(A) is entirely misguided.  Furthermore, the legislative history of the provision reveals that its intent is to prevent premature discovery by a defendant in an enforcement proceeding and to keep confidential the procedures by which an agency conducts its investigation and by which it obtains information.  S. Rep. No. 813, 89th Cong., 1st Sess. at 10 (1965).  As explained below, neither of these purposes is relevant to this present withholding.

In invoking Exemption 7(A), EPA is required to show that (1) a law enforcement proceeding is pending or prospective, and (2) that disclosure of information about that proceeding could reasonably be expected to cause some articulable harm.  *See, e.g., Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113-13 (D.C. Cir. 2007); *Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995); *Lewis v. I.R.S.*, 823 F.2d 375, 379 (9th Cir. 1987).  As to the first requirement, the Agency must show that disclosure would interfere with a "concrete prospective law enforcement proceeding."  *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986).  Even if the Agency can show that a "concrete" law enforcement proceeding is "prospective," it must also show that disclosure will cause "articulable harm."  Such harm is demonstrated if disclosure would give the requester "advance access to the government's case," or allow a "suspected violator" to "construct defenses which would permit violations to go unremedied."  *Ameren Missouri v. U.S. E.P.A.*, 897 F. Supp. 2d 802, 810-11 (E.D. Mo. 2012) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236-37 (1978)).  "Articulable harm" also includes the

possibility of "witness intimidation, destruction of evidence, or the creation of false alibis." *Id.* at 811.

Here, EPA's justification for its withholding stated, in full:

"[C]ertain records are being withheld because they concern settlement negotiations and are exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) as records compiled for law enforcement purposes, but only to the extent that the release of records could interfere with enforcement proceedings. These records are communications between EPA and certain dairies and pertain to settlement negotiations."

Exhibit A, p. 1. This justification is the exact type of conclusory, boilerplate language that cannot sustain a withholding under the law. *Weiner*, 943 F.2d at 978. This administrative appeal can and should be granted on this ground alone, especially considering that there is no ongoing enforcement proceeding by which the release of the information could interfere. But even if EPA's justification was somehow sufficient, its withholding suffers two other critical flaws: the investigation and "law enforcement proceeding" at issue – the negotiation of the AOC, an out-of-court agreement not subject to public comment – is over; and there could be no possible articulable harm in releasing the documents.

**First**, it is well-settled that Exemption 7(A) applies ***only*** to pending or prospective litigation. If, as is the case here, an "investigation" is over and a settlement has been reached, then there is no justification for the withholding. *See, e.g., Robbins Tire & Rubber Co.*, 437 U.S. at 231 (exemption only meant to prevent premature disclosures which would harm the government's case in court); *Philadelphia Newspapers, Inc. v. Dep't of Health and Hum. Servs.*, 69 F. Supp. 2d 63, 67 (D. D.C. 1999) (rejecting Exemption 7(A) withholding because investigation was complete, and there was no "ongoing case"); *Mullen v. U.S. Army Crim. Invest. Comm.*, 2012 WL 2681300 at *9 (E.D. Va. July 6, 2012) (agency voluntarily turned over documents previously protected under Exemption 7(A) because the "investigation was complete"); *Cuban v. S.E.C.*, 744 F. Supp. 2d 60, 86 (D. D.C. 2010) ("Exemption 7(A) only justifies withholding records compiled for law enforcement purposes for a limited time while an investigation is ongoing."). Here, EPA and the dairies have reached a negotiated settlement, embodied in the AOC. There is no longer any active or prospective law enforcement proceeding, nor any ongoing investigation. The deal, as it were, is done. As such, Exemption 7(A) cannot apply.

**Second**, no "articulable harm" will befall EPA, the dairies, or any other party through the release of the requested information. Indeed, the very purpose of Exemption 7(A) is lost in EPA's analysis, because the communications at issue have been in possession of the dairy-respondents since their inception. The dairies, their representatives, and their agents were both the originators and recipients of the communications sought by the Requestors' FOIA request. If the subject of an investigation is in possession of the documents sought to be withheld under Exemption

7(A), then the documents must be disclosed. *See, e.g., Lion Raisins v. U.S. Dept. of Ag.*, 354 F.3d 1072, 1085 (9th Cir. 2004) (disclosure required where subject of investigation had copies of documents withheld under Exemption 7(A)); *Wright v. O.S.H.A.*, 822 F.2d 642, 646 (7th Cir. 1987) (documents that originated from subject of investigation not exempt under 7(A)); *Dow Jones Co., Inc. v. F.E.R.C.*, 219 F.R.D. 167, 173 (C.D. Cal. 2003) (withholding improper where documents were provided to target of investigation); *Scheer v. U.S. Dept. of Justice*, 35 F. Supp. 2d 9, 14 (D. D.C. 1999) (exemption inapplicable where agency disclosed documents to target of investigation). Because the dairies – the target of the now-complete investigation – were the originators and recipients of the information sought, Exemption 7(A) cannot apply. The documents must therefore be disclosed.

Moreover, EPA has not identified any type of "articulable harm" that could theoretically result from disclosure, as it was required to do in its denial of Requestors' FOIA. Even if EPA had done so, however, it would have failed because the types of "harm" that have been sustained by the courts are simply not relevant here. There is no possibility that disclosure will give any party "advance access to the government's case," as the case has *already been made*. There also is no chance that release of the documents to Requesters will result in a "suspected violator" being able to "construct defenses which would permit violations to go unremedied," because with the AOC, the EPA has completed its case.[3] *Ameren Missouri*, 897 F. Supp. 2d at 810-11. Witness intimidation, destruction of evidence, or the creation of false alibis to undermine a pending case by the government are also inapplicable in this context, where the government action that would have taken account of the communications sought here is already complete. *See id.* at 811. Thus, there can be no "articulable harm" that will result from the disclosure of the requested materials. *Goodrich Corp. v. U.S. E.P.A.*, 593 F. Supp. 2d 184, 194 (D. D.C. 2009).

For the reasons stated above, EPA's withholding of 300 pages of responsive documents under the guise of Exemption 7(A) is improper as a matter of law, and must be overturned. The documents must be completely and timely produced.

Sincerely,

Daniel C. Snyder, OSB #105127
Law Offices of Charles M. Tebbutt, P.C.

---

[3] In no way do Requesters admit that the AOC remediates any violations caused by the dairies. Requesters believe that the AOC fails to abate the imminent and substantial endangerment caused by the dairies. The issue in the present appeal, however, is resolved by the fact that the government's investigation is complete. Release of these documents cannot impede EPA's investigation, because EPA chose to end its investigation based on these communications, thereafter executing the AOC.

941 Lawrence St., Eugene OR 97401
dan.tebbuttlaw@gmail.com
Tel. (541) 344-3505

cc:
Jennifer MacDonald, EPA Region X

FIRST AM. COMPLAINT - EX. 11                                                                 60



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 10**
1200 Sixth Avenue, Suite 900
Seattle, WA 98101-3140

OFFICE OF
REGIONAL COUNSEL

## APR 30 2013

Daniel Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, Oregon 97401

Re:     Freedom of Information Act Request EPA-R10-2013-003302

Dear Mr. Snyder:

This is an interim response to your Freedom of Information Act (FOIA) request dated February 1, 2013, for all communications between the U.S. Environmental Protection Agency, Region 10, (EPA), and six named dairies and their agents from September 1, 2012 to February 1, 2013. EPA refers to this FOIA request as FOIA No EPA-R10-2013-003302.

On March 28, 2013, EPA sent to you through FOIAonline the First Interim Response through which EPA disclosed some of the responsive records.

Additional documents have since been uploaded to FOIAonline. You can reach those documents by connecting to this link:
https://foiaonline.regulations.gov/foia/action/public/home

On the FOIAonline homepage, type in "EPA-R10-2013-003302" in the search box in the upper right hand corner. Click on the link to FOIA number EPA-R10-2013-003302, scroll down to the section titled "Released Records" then select the files you want to download.

We are unable to provide you with records that have been claimed confidential and may contain trade secrets or commercial or financial information which is exempt from disclosure under 5 U.S.C. § 552(b)(4). Pursuant to 40 C.F.R. § 2.204, your request is being initially denied because further inquiry by EPA is required before a final determination can be made. We will consult with the third parties in connection with their business confidentiality claim(s) covering these records and the Office of Regional Counsel will issue a final confidentiality determination.

In addition, certain records are being withheld because they concern settlement negotiations and are exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) as records compiled for law enforcement purposes, but only to the extent that the release of records could interfere with enforcement proceedings. These records are communications between EPA and certain dairies and pertain to settlement negotiations. The number of pages of records in this category are approximately 300.

You may appeal this response to the National Freedom of Information Officer, U.S. EPA, FOIA and Privacy Branch, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, D.C. 20460 (U.S. Postal Service Only), FAX: (202) 566-2147, Email: hq.foia@epa.gov.) Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, N.W. If you are submitting your appeal via hand delivery, courier service or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., Room 6416J, Washington, D.C. 20004. Your appeal must be made in writing, and it must be submitted no later than 30 calendar days from the date of this letter. The Agency will not consider appeals received after the 30 calendar day limit. The appeal letter should include the FOIA number listed above. For quickest possible handling, the appeal letter and its envelope should be marked "Freedom of Information Act Appeal."

Per your email communication to Jennifer MacDonald of my office dated April 12, 2013, you have given assurance of payment for up to $500.00. Under the category of "other," you will not be charged for the first 100 pages and two hours of search time; no review time will be charged, as well. The remaining balance after these deductions is billable. EPA will notify you if the cost to produce your request is expected to exceed your assurance of payment.

This is an interim denial response to FOIA request EPA-R10-2013-003302. If you have any questions regarding the status of this request, please contact Jennifer MacDonald at 206-553-8311, or by email at MacDonald.Jennifer@epa.gov.

Sincerely,

Allyn L. Stern, Regional Counsel
Office of Regional Counsel

cc: Stephanie Kercheval, FOIA Coordinator

2

EXHIBIT B

| | |
|---|---|
| From: | Daniel Snyder <dan.tebbuttlaw@gmail.com> |
| Subject: | Freedom of Information Act Request |
| Date: | February 1, 2013 4:17:13 PM PST |
| To: | r10.foia@epa.gov |

---

To Whom It May Concern:

This is a Freedom of Information Act Request made pursuant to 5 U.S.C. § 552 *et seq.*  On behalf of the Community Association for Restoration of the Environment, I am requesting EPA to provide electronic copies of all communications between representatives of the following Washington dairies and/or their agents, and EPA Region 10 personnel, including but not limited to Region 10 Administrator Dennis McLerran, between September 1, 2012 to the present.  The "representatives" and "agents" of the following dairies may include (but are not limited to) trade organizations, such as the Washington State Dairy Federation, the Dairy Farmers of Washington, and the Washington State Dairy Council, as well as attorneys from the law firms of Foster Pepper PLLC, K&L Gates LLP, Perkins Coie LLP, and/or the Halverson Northwest Law Group.  The dairies in question are:

1) D&A Dairy, located at 3001 Dekker Road, Outlook, WA.
2) George DeRuyter & Son Dairy, located at or near 5121 Dekker Road, Outlook, WA.
3) Cow Palace, LLC, located at 1631 N. Liberty Road, Granger, WA.
4) Liberty Dairy, LLC, located at 4300 Beam Road, Zillah, WA
5) Henry Bosma Dairy, located at 1271 N. Liberty Road, Granger, WA
6) R & M Haak and Sons Dairy, located at 4080 Washout Road, Sunnyside, WA.

Please inform this office if the costs of responding to this request are anticipated to exceed $100.

Thank you,

Daniel C. Snyder
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence Street
Eugene, OR 97401
Ph: 541-344-3505

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law as attorney-client and work-product confidential or otherwise confidential communications.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or other use of a transmission received in error is strictly prohibited.  If you have received this transmission in error, immediately notify us at the telephone number above.