1

2

3

4                  UNITED STATES DISTRICT COURT

5                 EASTERN DISTRICT OF WASHINGTON

6  COMMUNITY ASSOCIATION FOR
   RESTORATION OF THE                        NO:  13-CV-3067-TOR
7  ENVIRONMENT, INC., a Washington
   non-profit corporation,                   ORDER RE: MOTIONS FOR
8                                            SUMMARY JUDGMENT
                          Plaintiff,
9
           v.
10
   UNITED STATES
11 ENVIRONMENTAL PROTECTION
   AGENCY,
12
                          Defendant.
13

14      BEFORE THE COURT is Defendant's Motion for Summary Judgment

15 (ECF No. 34) and Plaintiff's Cross Motion for Partial Summary Judgment (ECF

16 No. 39).  This matter was heard with oral argument on July 23, 2014.  Andrea K.

17 Rodgers Harris and Daniel C. Snyder appeared on behalf of the Plaintiff.  Vanessa

18 R. Waldref appeared on behalf of Defendant.  The Court has reviewed the briefing

19 and the record and files herein, and is fully informed.

20 ///

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 1

BACKGROUND

This case concerns Plaintiff's Freedom of Information Act ("FOIA") requests to the Environmental Protection Agency ("EPA") regarding information about certain dairies in the Lower Yakima Valley, Washington, and nitrate contamination in residential drinking water near the dairies. In the motion now before the Court, Defendant EPA seeks summary judgment on Plaintiff's claims and Plaintiff cross-moves for partial summary judgment on Counts I, II, III and V.

FACTS

In September 2012, an EPA report, "Relation Between Nitrate in Water Wells and Potential Sources in the Lower Yakima Valley" ("Yakima Valley Nitrate Study"), found that the dairies in the study ("Yakima Valley Dairies") are a likely source of nitrate in the residential drinking water wells downgradient of the dairies. ECF No. 35 at 2. Based on the results of the Yakima Valley Nitrate Study, the EPA offered to negotiate an agreement with the Yakima Valley Dairies. *Id*. On March 6, 2013, the EPA reached a legal agreement—the Administrative Order of Consent ("AOC")—with four of the Yakima Valley Dairies regarding the nitrate pollution. *Id*. at 2-3. The dairies were: Cow Palace, LLC; George DeRuyter & Son, LLC and George & Margaret, LLC (part of both D&A and George DeRuyter & Sons Dairy); Liberty Dairies, LLC and H&S Bosma Dairy (part of Liberty Dairy); and D&A Dairy, LLC. *Id*. at 3. The EPA contends that it was in negotiations with

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 2

R&M Haak & Sons Dairy, which was also mentioned in the study. *Id*. But CARE contends that the EPA knew that the Haaks had no financial resources to address the AOC criteria and that subsequent EPA actions indicate that no negotiations were occurring with the Haaks. ECF No. 39-2 at 2.

On February 14, 2013, CARE filed lawsuits against the four Yakima Valley Dairies that entered into the agreement with the EPA. ECF No. 35 at 3. Shortly before doing so, CARE began to submit FOIA requests to the EPA regarding the dairies and the nitrate pollution.

**FOIA Request One**

On January 29, 2013 at 4:50 p.m. Pacific Time, CARE submitted its first FOIA request to the EPA ("FOIA Request One"), requesting electronic copies of all preliminary and/or final sampling results of the groundwater sampling in the Yakima Valley. ECF No. 35 at 4; ECF No. 41-1 at 2. The EPA contends that the 20-day statutory deadline for this request was February 28, 2013. ECF No. 35 at 5. CARE's counsel Charles Tebbutt sent a letter to the EPA Region 10 Administrator stating that CARE believed February 27 was the response deadline. *Id*. EPA Region 10 Counsel Allyn Stern contacted CARE attorneys Tebbutt and Daniel Snyder and informed them that the EPA would require additional time to complete the request. *Id*. The EPA provided written notice that, pursuant to the Agency's FOIA regulations under 40 C.F.R. § 2.104(d), the EPA would need an additional

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 3

ten working days to complete FOIA Request One, until March 14, 2013. *Id*. The notice indicated that the extension was required because of "[t]he need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices [sic] having a substantial subject-matter interest in your request." ECF No. 35-3. All records responsive to FOIA Request One were released on March 6, 2013. ECF No. 35 at 6; ECF No. 39-2 at 5. CARE did not appeal the EPA's response to this request.

CARE also states that CARE's counsel spoke with Allyn Stern, Regional Counsel for EPA Region 10, on February 28. ECF No. 39-1 at 2. CARE maintains Stern informed him that the EPA would not make a timely determination on Request One; that the agency was seeking a time extension based on unusual circumstances; and that the EPA had located responsive records and was not reviewing them for disclosure exemptions under the FOIA, and would not produce responsive documents until after the terms of the AOC were agreed to by the EPA and the dairies. *Id*.

**FOIA Request Two**

CARE submitted its second FOIA request ("FOIA Request Two") seeking records of communications exchanged between the dairies and EPA on Friday February 1, 2013 at 4:17 p.m. Pacific Time. ECF No. 35 at 6; ECF No. 41-2 at 2. The EPA states that the appropriate program office was assigned the request on

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 4

February 6, 2013. ECF No. 35 at 6. CARE states that it received electronic notification that it had made the request on February 1. ECF No. 39-1 at 4. On March 5, 2013, the EPA sent a notice to CARE stating that the Agency required an extension because of "[t]he need for consultation, which shall be conducted with all practicable speed, with another agency or EPA offices having a substantial subject-matter interest in your request." ECF No. 35-4. The notice states that the new deadline for a disclosure determination is "ten days from today, **March 21, 2013**." ECF No. 35-4, Exhibit 14 (emphasis in original).[1] CARE wrote to the EPA seeking clarification that the correct deadline was March 19, 2013, but received no response. ECF No. 39-2 at 7.

The EPA responded to FOIA Request Two on March 28, 2013, requesting written assurance of payment so that the agency could complete the request. ECF No. 35 at 7. CARE issued payment on April 12, 2013. *Id*. The EPA provided CARE with its response to FOIA Request Two by granting in-part the release of approximately 43 records, and partially denied the request by withholding records under Exemption 4 and Exemption 7(A). *Id*. The EPA states that this response was

---

[1] The EPA contends that this is a 10-day extension; CARE contends it was 12-day extension.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 5

dated April 30, 2013, while CARE maintains that it was May 2, 2013, and that the response was only an "interim response." ECF No. 39-2 at 8.

**Exemption 7(A).** The EPA withheld 61 records under Exemption 7(A), which were comprised of communications between the Agency and the Yakima Valley Dairies that pertained to settlement negotiations. ECF No. 35 at 8. On May 30, 2013, CARE appealed the EPA's response. *Id*. The EPA did not issue a final appeal determination regarding Exemption 7(A) on June 27, 2013. *Id*. CARE filed its complaint on June 28, 2013. ECF No. 35 at 8. On July 9, 2013, Haak Dairy's counsel informed the EPA that the dairy sold all of its cows.[2] *Id*. On September 18, 2013, the EPA released all records held pursuant to Exemption 7(A). *Id*.

**Exemption 4.** The EPA also withheld three notebooks under Exemption 4 as confidential business information claimed by three Yakima Valley Dairies. ECF No. 35 at 9. The Region 10 Office of Regional Counsel was delegated the responsibility of completing a confidentiality determination for the information claimed as confidential business information ("CBI") for the three Yakima Valley Dairies. *Id*. The EPA sent a letter to the dairies on May 3, 2013, informing them

---

[2] CARE contends that the EPA should have known that Haak Dairy sold its cows much earlier, in May 2013, if the Agency had been diligently investigating the dairy. ECF No. 39-2 at 9.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 6

that the Agency received a FOIA request for information submitted to the EPA,

which the dairies had claimed as CBI. *Id*. The Yakima Valley Dairies'

substantiation deadline was May 28, 2013. *Id*. Counsel for the dairies contacted the

EPA on May 22, 2013, requesting a ten working-day extension for their response,

stating that:

> [one attorney's] vision has been impacted by an adverse reaction to an insect bite she sustained on her eyelid. The swelling and discomfort associated with this has significantly impacted her ability to work this week and she will not be able to work the remainder of the week. Second, [another attorney] will be out for a previously scheduled vacation until Tuesday, May 28—the date the dairy responses are due. The fact that both [attorneys] are unavailable, coupled with the Memorial Day holiday and our inability to fully coordinate with our clients, significantly impair the Dairies' ability to fully respond to the EPA's request.

ECF No. 35-5. The EPA granted the Dairies' extension request. ECF No. 35 at 10.

The agency received the substantiations from the three Yakima Valley Dairies on

June 7, 2013. *Id*. On March 11, 2014, the Agency issued an adverse determination

on a subset of the three dairies' CBI claims.[3] *Id*. The three dairies did not seek

judicial review of this partial confidentiality determination, and the EPA released

the information in the partial CBI determination to CARE on March 28, 2014. *Id*.

CARE received documents that were heavily redacted. ECF No. 39-2 at 11.

---

[3] CARE contends that the determination was only partially adverse. ECF No. 39-2 at 11.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 7

On July 21, 2014, two days before the hearing on the motions now before the Court, the EPA filed a Notice of Case Update Regarding EPA's Final Confidentiality Determination. ECF No. 55. In it, the EPA states that it has determined that the information claimed as confidential by the dairies is not a trade secret or confidential business information, and will accordingly be released to CARE subject to the EPA's regulations at 40 C.F.R. § 2.205(f). ECF No. 55 at 2.

**FOIA Request Three**

Care submitted its third FOIA request ("FOIA Request Three") on July 12, 2013. ECF No. 35 at 11. The EPA contends that the request was submitted after 5 p.m. Eastern Time, and therefore received it on July 15, 2013. *Id*. On July 15, 2013, the EPA contacted CARE to clarify the scope of its FOIA request. ECF No. 35 at 12. On August 12, 2013, the Agency notified CARE that pursuant to its FOIA regulations under 40 C.F.R. § 2.104(d), the EPA would need additional time—until August 28, 2013—to complete FOIA Request Three. ECF No. 35-6, Exhibit 34. The EPA contends that this is a 10-day extension; CARE contends it was 12-day extension.  On August 27, 2013, the EPA issued its response to FOIA Request Three and released 74 records. ECF No. 35 at 12. It also withheld certain information. *Id*. The EPA states that the records were withheld pursuant to FOIA Exemption 6, and that under this exemption it redacted personal information about the well users and dairymen. ECF No. 35 at 12. CARE contends that this

justification is materially different than what the EPA told CARE in its August 27, 2013, letter; that the EPA did not inform CARE what information was redacted under what exemption until the present motion was filed, ECF No. 39-2 at 14; and that records were withheld pursuant to a private agreement reached between the American Farm Bureau Federation and the EPA, ECF No. 39-1 at 8.

The EPA maintains that the EPA also redacted another subset of information related to ongoing litigation in United States District Court in Minnesota. ECF No. 35 at 12. CARE contends that the EPA did not indicate which information was being redacted under which exemption or pursuant to a private agreement with a private litigant. ECF No. 39-2 at 14.

**American Farm Bureau Reverse-FOIA litigation.** On July 5, 2013, the American Farm Bureau Federation ("AFBF") and the National Pork Producers Council filed a reverse-FOIA lawsuit against the EPA and its administrator in the District of Minnesota, seeking preliminary and injunctive relief prohibiting the release of certain information related to farms and their operations which had been collected by the Agency. ECF No. 35 at 13. The AFBF claimed that the EPA released farm information that should have been protected under FOIA Exemption 6. *Id*. The EPA decided to temporarily defer pending and subsequent FOIA requests seeking the same farm information the AFBF plaintiffs allege is subject to Exemption 6, based on the complexity of the Exemption 6 analysis before the

district court and the nature of the alleged privacy interests at issue. *Id*. CARE

contends that this is an admission that the EPA has violated the FOIA by deciding

to defer properly made FOIA requests for reasons that are not cognizable under the

statute. ECF No. 39-2 at 15. On September 11, 2013, the FOIA Office released in

full the information withheld due to the pending litigation. ECF No. 35 at 14.[4]

**FOIA Request Four**

CARE submitted its fourth FOIA request ("FOIA Request Four") on August

28, 2013. ECF No. 35 at 14. The EPA states that the Region 10 FOIA Office

received FOIA Request Four on August 29, 2013 and Region 10 was assigned as

the lead office for this FOIA request. *Id*. The Region 10 FOIA Officer reassigned

FOIA Request Four to the Headquarters FIOA Office on September 3, 2013. *Id*. at

15. The FOIA Office for the Office of Water received FOIA Request Four on

September 4, 2013, and the deadline was calculated to be October 1, 2013. *Id*.

CARE contends that the deadline should have been 20 days after the Agency's

initial receipt of the request on August 28, 2013. ECF No. 39-2 at 16. On

September 30, 2013, the EPA informed CARE that it would not complete FOIA

Request Four within the 20-day statutory period because of "unusual

---

[4] CARE contests this statement on grounds that the EPA never specified which

information was being redacted under which exemption.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 10

circumstances," including the "Agency's need to search for an collect the

requested records from field facilities or other establishments that are separate

from the office processing the request." ECF No. 35-6, Exhibit 39.  The notice

stated that the Agency would respond to FOIA Request Four on or before October

16, 2013. *Id*. After the Federal Government reopened, the EPA contacted CARE

on October 24, 2013, to request an alternative deadline of December 16, 2013, to

complete FOIA Request Four, citing the federal government shutdown (between

the end of the day September 30, 2013, and October 17, 2013). ECF No. 35 at 15-

16. This extension sought more than the statutory 10-day extension. The EPA and

CARE ultimately agreed on an alternative deadline which would require the

Agency to complete FOIA Request Four by December 15, 2013, and provide an

interim response by November 15, 2013. ECF No. 35 at 16. On November 14,

2013, the EPA provided its interim response by releasing seven records to CARE.

*Id*. On December 13, 2013, the EPA issued its response to FOIA Request Four by

releasing 22 partially redacted records and withholding approximately 288

documents pursuant to FOIA Exemption 5. *Id*. CARE did not file an administrative

appeal against the EPA's December 13 response. *Id*.

On June 28, 2013, CARE filed the lawsuit against the EPA now before the

Court. ECF No. 1. On February 4, 2014, CARE amended its complaint, alleging:

- Count 1: Failure to provide timely and legally adequately determination on CARE's FOIA Request Two.

- Count II: Failure to abide by statutory and regulatory procedures in responding to and processing CARE's FOIA requests.

- Count III: Unlawful withholding of records responsive to Request Two under 5 U.S.C. 552(B)(7)(A).

- Count IV: Unlawful withholding of records responsive to Request Two under 5 U.S.C. 552(B)(4).

- Count V: Pattern, practice, and/or policy of unreasonably and unlawfully withholding records responsive to FOIA requests.

- Count VI: Violations of the Administrative Procedure Act.

ECF No. 20.

CARE asks that the Court:

(1) Order the EPA to promptly provide CARE all the information sought in this action and to immediately disclose the requested documents.

(2) Declare the EPA's failure to make a timely and legally adequate determination on Request Two to be unlawful under the FOIA, 5 U.S.C. § 552(a)(6)(A)(i); agency action unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1); and/or agency action that is arbitrary,

1    capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C.

2    § 706(2).

3    (3) Declare the EPA's failure to abide by statutory and regulatory procedures in

4        responding to and processing CARE's FOIA requests to be unlawful under

5        the FOIA, 5 U.S.C. § 552(a)(6)(A)(i); agency action unlawfully withheld

6        and unreasonably delayed, 5 U.S.C. § 706(1); and/or agency action that is

7        arbitrary, capricious, an abuse of discretion, and not in accordance with law,

8        5 U.S.C. § 706(2).

9    (4) Declare the EPA's withholding of records responsive to Request Two to be

10       unlawful under the FOIA, 5 U.S.C. § 552(a)(6)(A)(i); agency action

11       unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1); and/or

12       agency action that is arbitrary, capricious, an abuse of discretion, and not in

13       accordance with law, 5 U.S.C. § 706(2).

14   (5) Declare the EPA's withholding of records responsive to Request Two to be

15       unlawful under the FOIA, 5 U.S.C. § 552(a)(6)(A)(i); agency action

16       unlawfully withheld and unreasonably delayed, 5 U.S.C. § 706(1); and/or

17       agency action that is arbitrary, capricious, an abuse of discretion, and not in

18       accordance with law, 5 U.S.C. § 706(2); and order the EPA to promptly

19       provide all the withheld material to CARE.

20

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 13

(6) Declare the EPA's pattern, practice and/or policy of reasonably and

unlawfully withholding records response to FOIA request to be unlawful

under the FOIA; agency action unlawfully withheld and unreasonably

delayed, 5 U.S.C. § 706(1); and/or agency action that is arbitrary,

capricious, an abuse of discretion, and not in accordance with law, 5 U.S.C.

§ 706(2).

(7) Issue appropriate injunctive relief prohibiting the EPA from continuing its

illegal pattern, practice, and/or policy of unlawfully and unreasonably

withholding records responsive to FOIA requests, including a

recommendation that Special Counsel investigate this matter pursuant to 5

U.S.C. § 552(a)(4)(F)(i).

(8) Award CARE its reasonable attorney fees and costs pursuant to 5 U.S.C.

§ 552(a)(4)(E) and/or 28 U.S.C. § 2412.

ECF No. 20.

　　　In the motions now before the Court, the EPA moves for summary judgment

on CARE's claims, contending that (1) this Court lacks jurisdiction over CARE's

claims; (2) that CARE fails to state a claim for which relief can be granted; (3) that

CARE's claims are moot because no agency records have been improperly

withheld; (4) that the EPA properly withheld documents under Exemption 7(A),

then properly released them under changed circumstances; (5) that CARE cannot

establish that the EPA engaged in a pattern or practice of violating FOIA; (6)

CARE has not exhausted its administrative remedies for its CBI claims and the

court lacks subject matter jurisdiction; and (7) CARE fails to state a claim under

the Administrative Procedure Act.  CARE cross-moves for summary judgment on

Counts I, II, III and V.

DISCUSSION

Under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, federal

agencies must make their records available to the public upon request, subject to

nine discretionary exemptions. *See Milner v. Dep't of Navy,* 131 S.Ct. 1259, 1262

(2011). This case presents four FOIA issues: (1) whether the FOIA provides a

cause of action for violations of regulations and statutory provisions about

timeliness and procedure after the agency has produced the requested records; (2)

whether instances of lateness, improper withholding and allegations of future harm

are sufficient to constitute a "pattern and practice" of violations under the FOIA;

(3) under what circumstances a plaintiff "substantially prevails" under the FOIA's

fee-shifting provision; and (4) whether the Administrative Procedure Act ("APA")

provides a cause of action for an agency's violations of FOIA procedure.[5]

---

[5] Though Plaintiff alleges in Count IV of its Second Amended Complaint that the

EPA unlawfully withheld records responsive to FOIA Request Two under 5 U.S.C.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 15

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372,

---

§ 552(B)(4), the parties agreed at oral argument the Court need not consider this count in light of the EPA's July 21, 2014, case update (ECF No. 55), which states that the EPA will release the records. Accordingly, the Court will not further consider this argument here.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 16

378 (2007).  Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

The Freedom of Information Act ("FOIA") gives individuals a judicially-enforceable right of access to government agency documents. *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004) (citing 5 U.S.C. § 552). The Supreme Court has interpreted the disclosure provisions of FOIA broadly, noting that the act was animated by a "philosophy of full agency disclosure." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989); *see also Dep't of the Air Force v. Rose,* 425 U.S. 352, 361 (1976) ("disclosure, not secrecy, is the dominant objective of the Act"). In order to prevent disclosure of a limited class of sensitive government documents, FOIA lists nine statutory exemptions. 5 U.S.C. § 552(b)(1)-(9). Unlike the disclosure provisions of FOIA, its statutory exemptions "must be narrowly construed." *John Doe Agency,* 493 U.S. at 152.

**1.  Whether the FOIA provides a cause of action for Counts I and II**

Defendant EPA argues that the FOIA provides no cause of action for Plaintiff's claims that the EPA failed to provide a timely and legally adequate determination on Request Two ("Count I") and to abide by statutory and regulatory procedures in responding to and processing CARE's FOIA requests ("Count II"). The Court agrees.

Under 5 U.S.C. § 552(a)(4)(B), jurisdiction over FOIA claims is dependent upon a showing that an agency has (1) "improperly"; (2) "withheld"; (3) "agency records." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). "Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation." *Id. See also Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution.").

Here, the EPA has produced all records responsive to FOIA Request One, ECF No. 35 at 8; has produced all records responsive to FOIA Request Two except those withheld under Exemption 4, which will be released to CARE per its Notice of Case Update (ECF No. 55); has produced all records requested under Request Three and withheld pursuant to the AFBF litigation; and has produced records pursuant to Request Four except for the approximately 288 documents withheld pursuant to FOIA Exemption 5, ECF No. 35 at 16; ECF No. 39-2 at 17. Thus, all records requested have either been produced or withheld pursuant to a FOIA exemption. Under the FOIA, relief is only available for records that have been withheld. Accordingly, under the FOIA, CARE can challenge the EPA's

withholdings under the exemptions as well as claim that there is an impermissible pattern or practice in responding to FOIA requests (see below). However, it appears that CARE cannot, under the FOIA, challenge the individual timeliness of production or the Agency's compliance with statutory or regulatory guidelines with respect to documents that have been produced.

Furthermore, production of requested nonexempt material moots FOIA claims. *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) ("Defendants correctly cite authority for the proposition that the production of all nonexempt material, 'however belatedly,' moots FOIA claims.") (citing *Perry v. Block,* 684 F.2d 121, 125 (D.C. Cir. 1982); 5 U.S.C. § 552); *See also Yonemoto v. Dep't of Veterans Affairs*, 305 F. App'x 333, 334 (9th Cir. 2008) (unpublished) (citing *Papa*, 281 F.3d at 1013, and holding that the VA's production of redacted material in the discovery process of his EEOC claim moots his FOIA claims); *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) ("In general, '[o]nce the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot.'"); *Carter v. Veterans Admin.*, 780 F.2d 1479, 1481 (9th Cir. 1986) ("We hold, however, that since Carter's complaint sought injunctive relief directing the V.A. to provide the documents he requested, it was mooted when the V.A. voluntarily mailed copies of the regulations to Carter.").

Plaintiff contends that the failure to make a timely determination *is* an improper withholding under the FOIA, even if the documents are later produced. ECF No. 52 at 2 (citing *Oregon Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (hereinafter "*ONDA*")). The *ONDA* court held "that an untimely response is a violation of FOIA, regardless of the final outcome of the request." *Id.* In *ONDA*, "[the Agency] responded well past the statutory time limits, with the first request extending from April 30, 2004 to a response on December 20, 2004 and the second request occurring on January 7, 2005 but never receiving a technically complete response. The information provided on March 7, 2005 did not explain [the requestor's] appeal rights." *Id*. In *ONDA*, the agency responded well past the statutory time limits, waiting eight months to respond to one of the plaintiff's requests and not providing an adequate response to a second request. *Id.* Plaintiff contends that, though the EPA made a response, it did not make a determination, as defined in *Citizens for Resp. and Ethics in Wash. v. FEC*, 711 F.3d 180, 185 (D.C. Cir. 2013) (hereinafter "*CREW*"). As such, the EPA's determination on Request Two is a year late, CARE argues, and falls into the egregious lateness giving rise to a cause of action described in *ONDA*. In *CREW*, the D.C. Circuit has held that to constitute a determination, "within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 20

the agency plans to withhold under any FOIA exemptions." *Id.*at 185. "The statute requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks." *Id*. at 188-89.

Here, however, the EPA appears to have made a determination on Request Two by April 30, 2013, when, as Plaintiff puts it, the Agency "provided CARE with a subset of documents responsive to Request Two" and "explained that EPA was withholding documents under Exemptions 7(A) and 4." ECF No. 39-1 at 6. Thus, the Agency appears to have made a determination within the definition provided in *CREW*. The EPA produced documents and explained that it was withholding other documents pursuant to an exception. The EPA then, pursuant to Exemption 4, proceeded to conduct a confidentiality determination. ECF No. 39-1 at 6. Thus, while the agency's response was still late per statutory guidelines, it is not as egregiously late as the response the *ONDA* court took issue with. As such, the instant facts are distinguishable from those in *ONDA*. Furthermore, in *CREW* the D.C. Circuit explicitly held that the agency's penalty for not making a timely determination is that it "cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at 189 ("If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies."). That the EPA's

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 21

determination was not made under the definition in *CREW* until nearly a year after the request does not necessarily make the EPA's deficiency actionable under the FOIA.

Thus, the Court finds that there is no cause of action under FOIA for Counts I and II.

### 2. Whether the EPA engaged in a pattern or practice of FOIA violations

Despite this, an agency's time limit and procedural violations may warrant a remedy under the FOIA if there is a pattern and practice of such violations. Plaintiffs may bring a claim alleging a pattern and practice of unreasonable delay in responding to FOIA requests. *Hajro v. U.S. Citizenship & Immigration Servs.*, 832 F. Supp. 2d 1095, 1107 (N.D. Cal. 2011) ("It is undisputed that a plaintiff may bring a claim alleging 'a pattern and practice of unreasonable delay in responding to FOIA requests.'"); *see also Liverman v. Office of the Inspector Gen.,* 139 Fed.Appx. 942, 944 (10th Cir. 2005) (quoting *Mayock v. Nelson,* 938 F.2d 1006, 1008 (9th Cir. 1991)); *Gilmore v. U.S. Dep't of Energy,* 33 F.Supp.2d 1184, 1189 (N.D. Cal. 1998) (finding that plaintiff may allege a pattern or practice of untimely responses to his FOIA requests even if a court already has determined that the documents sought were not improperly withheld).  The Court has jurisdiction to hear a claim alleging a pattern and practice of unreasonable delay in responding to FOIA requests, even where the plaintiff's FOIA request had already been resolved.

*See, e.g., Payne Enter., Inc. v. United States,* 837 F.2d 486, 490-91 (D.C. Cir. 1988) (production of documents does not moot pattern or practice claim). "Injunctive relief is warranted in order to remedy a pattern and practice of FOIA violations by an agency where there is 'a probability that alleged illegal conduct will recur in the future.'" *Hajro,* 832 F. Supp. 2d at 1108 (quoting *Long v. United States Internal Revenue Service,* 693 F.2d 907, 909 (9th Cir. 1982)). "In deciding whether to grant an injunction, the court must consider the effect on the public of disclosure or nondisclosure, the good faith of any intent to comply expressed by the agency, and the character of past violations." *Id*. (citing *Long*, 693 F.2d at 909).

Count V of CARE's Second Amended Complaint alleges that the EPA engaged in a pattern, practice, and/or policy of unreasonably and unlawfully withholding records responsive to FOIA requests. ECF No. 20 at 39. Defendant EPA contends that the facts in this case do not support the rare circumstances in which courts provide relief after an agency has provided the requested records; i.e., Plaintiff cannot establish that the EPA has a pattern or practice of refusing to produce records under the FOIA and is disclosing them only to avoid judicial review. ECF No. 34 at 17. The EPA further contends that CARE cannot demonstrate any harm in fact by any improper withholding. *Id*. CARE cites several types of violations it argues form the pattern or practice of violations. It contends that the EPA demonstrated a pattern or practice of unreasonably withholding

records responsive to FOIA requests based on justifications not legally cognizable under the FOIA when it (1) repeatedly failed to promptly make the records available, (2) delayed production of records based on its desire to complete negotiations with the dairies, and (3) privately agreed to withhold documents related to the AFBF litigation; and (4) failed to meaningfully evaluate whether records responsive to FOIA requests are exempt from disclosure under the confidential business information exemption. ECF No. 20 at 40-43. The Court considers each in turn.

### Whether CARE suffered an injury-in-fact

Defendant EPA contends that CARE has suffered no injury in fact from any alleged untimely production of documents. The Supreme Court has established that the minimum constitutional requirements for standing are: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,*

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 24

504 U.S. 555, 560–61 (1992). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 561.

A district court in the Ninth Circuit has held that an agency's failure to process a FOIA request "in a timely manner was itself an injury—an invasion of a legally protected interest, as defined in *Defenders of Wildlife." Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1188-89 (N.D. Cal. 1998). The court explained that "Congress has made it clear that a person filing a FOIA request has a concrete interest in prompt processing of that request. *Id.* at 1189.  In *Gilmore*, the agency properly denied plaintiff's December 8, 1993 FOIA request, but did so long after the deadline for responding, on May 2, 1994. *Id.* at 185.

Here, the Court agrees with the *Gilmore* court that CARE's interest in the timely production of the documents is sufficient to meet the "injury-in-fact" requirement for standing. Thus, the Court will consider the merits of Plaintiff's pattern and practice claim.

**Whether the EPA's requests for extensions were timely.** Insofar as Plaintiff claims that the EPA's failure to provide timely determination on its requests is a violation, the Court disagrees.

CARE first contends that the EPA exceeded the 20-day deadline for responding to Requests One and Two. The EPA's FOIA implementing regulations state that "[u]nless the Agency and the requester have agreed otherwise, or when

unusual circumstances exist as provided in paragraph (e) of this section, EPA

offices will respond to requests no later than 20 working days from the date the

request is received and logged in by the appropriate FOI Office." 40 C.F.R.

§ 2.104(a). "On receipt of a request, the FOI Office ordinarily will send a written

acknowledgment advising you of the date it was received and of the processing

number assigned to the request for future reference." 40 C.F.R. § 2.104(b).

CARE contends that the deadline for Request One was February 27, 2013,

but that the EPA sent no extension request until February 28, 2013, and that

records were not produced until after the terms of the AOC were agreed to on

March 5, 2013. ECF No. 39-1 at 3-4. The EPA contends that CARE has calculated

the dates incorrectly, and that the confirmation of receipt to which CARE refers

(which was sent on the same day as the requests) are automatically generated by

the system. ECF No. 35-2 at 10. The EPA contends that within the FOIA online

program, FOIA requests received after 5 p.m. Eastern Time or submitted on non-

working days will be considered received on the next working day. *Id*. Thus, the

EPA considered Request One to be received on January 30, 2013, and counted

February 28, 2013, as a federal holiday; as such, the deadline for Request One was

February 28, 2013.  The Court agrees. The received date indicated on the FOIA

online system (cited by Defendant) is January 30, 2013. ECF No. 35-3 at 7. The

EPA's regulations provide that the office will respond to the request "no later than

20 working days from the date the request is received and logged in by the appropriate FOI office." 40 C.F.R. § 2.104(a)[6]. CARE can hardly expect a request received by the system 10 minutes from the end of the business day Pacific Time, and after close of business Eastern Time, to be received and logged in by the appropriate office that same day. Calculating receipt by the next business day is standard in automated systems. Many banks, for example, will consider deposits made after a certain time as made on the next day. Accordingly, the Court finds that the request was "received" by the EPA on January 30, 2013, and as such the 20-day deadline for the EPA's response was February 28, 2013. Thus, the EPA's response was not untimely.

CARE also contends that the deadline for Request Two was March 4, 2013, but the EPA responded untimely because it did not request an extension until March 5. ECF No. 39-1 at 5. The Court disagrees for the reasons explained above. CARE submitted its online request Friday February 1, 2013, at 4:17 p.m. Pacific

---

[6] *See also* 5 U.S.C. § 552(6)(A)(i) (Each agency shall "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination…").

Time. As above, it is reasonable that the request be considered received the next business day, Monday, February 4, 2013. Accordingly, counting the February 18, 2013, federal holiday, the 20-day deadline would be March 5, 2013. As such, the EPA's March 5, 2013, request for an extension was timely.

**Whether the EPA's extensions exceeded the limits under FOIA and its implementing regulations**

CARE also contends that the EPA exceeded the 10-day extension limit provided for by the FOIA.

With respect to time extensions, the EPA's FOIA implementation regulations provide that

> [w]hen the statutory time limits for processing a request cannot be met because of "unusual circumstances," as defined in the FOIA, and the time limits are extended on that basis, you will be notified in writing, as soon as practicable, of the unusual circumstances and of the date by which processing of the request should be completed. When the extension is for more than 10 working days, the Agency will provide you with an opportunity either to modify the request so that it may be processed within the 10 working day time limit extension or to arrange an alternative time period for processing the original or modified request.

40 C.F.R. § 2.104(d).

CARE contends that the ten-day extension to Request Two should have been March 19, not March 21, as the EPA stated. ECF No. 39-1 at 5. The EPA counters that FOIA Request Two was assigned to the correct program office on February 6, 2013; as such, the 20-day deadline for FOIA Request Two is March 7, 2013.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 28

1    Accordingly, the Agency argues, the 10 day extension runs from March 7, 2013,

2    not March 5, and therefore extends to March 21, 2013, instead of March 19. ECF

3    No. 35 at 6. However, the Court need not determine which deadline is correct,

4    because the EPA provided an "interim response" on March 28, 2013, and therefore

5    missed the deadline by either calculation.

6         Request Three was submitted late Friday afternoon on July 12, 2013. The

7    EPA would have considered the request received on the next business day, July 15,

8    2013, ECF No. 35-2 at ¶ 45, but the request needed clarification and EPA did not

9    receive clarification from CARE until late that evening. *Id*. Thus, the EPA should

10   have considered the request received on July 16, 2013, with a due date of August

11   13, 2013.  The EPA then invoked the unusual circumstances requirement for an

12   extension on August 12, 2013, because of "[t]he need to search for, collect, and

13   appropriately examine a voluminous amount of separate and distinct records

14   involved in" the request. ECF No. 35-6, Exhibit 34. The letter stated that the new

15   due date was August 28, 2013 (because the EPA mistakenly believed the 20-day

16   due date was August 14, 2013). *Id*. CARE contends that this is a 12-day, not a 10-

17   day extension. ECF No. 39-1 at 10. Both parties were wrong. With a 10-day

18   extension from the properly calculated 20-day deadline (August 13, 2013), the

19   EPA had until August 27, 2013 to timely respond.  By happenstance, it did so that

20   day.  ECF No. 35-2 at ¶ 47; ECF No. 35-6, Exhibit 35.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 29

With respect to Request Four, CARE again contends that the EPA improperly effectuated a 12-day, not a 10-day extension. ECF No. 39-1 at 10.[7] Request Four's analysis is not quite so simple, however. Request Four was submitted late afternoon on August 28, 2013, thus, it was considered received the next day.  However, the agency timely determined that a different office should respond to the request for information. ECF No. 35-2 at ¶ 51.  The EPA transmitted the request to the proper FOIA office which was then received on September 4, 2013. *Id*. The 20-day deadline was October 2, 2013.  The EPA invoked the unusual circumstances requirement for an extension in a letter dated September 30, 2013, because of the "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." ECF No. 35-6, Exhibit 39. The letter accurately stated that the new due date was October 16, 2013. *Id*.

Unfortunately, the Federal Government was shut down on October 1 to October 17, 2013. Only then did the EPA seek greater than the 10-day statutory extensions, based on these exceptional circumstances.  The EPA provided CARE

---

[7] In the EPA's request for a later deadline, it provided CARE an opportunity to narrow or modify its request as well as contact information for a liaison, as required. ECF No. 35 at 16; ECF No. 39-2 at 17.

an opportunity to narrow or modify its request and provided contact information of
its Public FOIA Liaison.  ECF No. 35-7, Exhibit 41. The records were eventually
provided, or exceptions invoked.  *See* ECF No. 35-2, ¶¶ 57-60.

CARE contends that because the extensions were more than 10 days, under
the regulations and the FOIA, the extensions must include an opportunity to
narrow the scope of the request, arrange an alternative timeframe, or make the
EPA's public liaison available. ECF No. 39-1 at 10. *See*  40 C.F.R. § 2.104(d)
("When the extension is for more than 10 working days, the Agency will provide
you with an opportunity either to modify the request so that it may be processed
within the 10 working day time limit extension or to arrange an alternative time
period for processing the original or modified request.")[8]. However, having found

_____

[8] *See also* 5 U.S.C. § 552(a)(6):

> No such notice shall specify a date that would result in an extension for
> more than ten working days, except as provided in clause (ii) of this
> subparagraph.

> (ii) With respect to a request for which a written notice under clause (i)
> extends the time limits prescribed under clause (i) of subparagraph (A), the
> agency shall notify the person making the request if the request cannot be
> processed within the time limit specified in that clause and shall provide the
> person an opportunity to limit the scope of the request so that it may be
> processed within that time limit or an opportunity to arrange with the agency
> an alternative time frame for processing the request or a modified request.

5 U.S.C. § 552(6).

that the extensions for Request Two and Three did not exceed 10 business days from the initial 20-day deadline (calculated from when the appropriate department received the request), the Court finds that the EPA was not required to include the language giving the requestor an opportunity to narrow its request, arrange for an alternative timeframe, or make a public liaison available.

It is clear on this record that the EPA issued the required language with respect to Request Four and its highly unusual circumstances of the government shutdown.

**Whether the EPA's grounds for extensions were valid**

CARE also argues that the EPA required the extensions on improper grounds. The Court disagrees. The FOIA provides that:

> In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched.

5 U.S.C. § 552(6)(B)(i). Under the FOIA:

> "[U]nusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests--**(I)** the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; **(II)** the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or **(III)** the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the

1    determination of the request or among two or more components of the
2    agency having substantial subject-matter interest therein.

3    5 U.S.C.A. § 552(a)(6)(B)(iii).

4        CARE appears to argue that, pursuant to the FOIA and implementing

5    regulations, the EPA could not validly seek an extension to Request One in order

6    to wait for the EPA and the Yakima Dairies to come to an agreement on the AOC.

7    CARE also argues that there is no enumerated exemption allowing the Agency to

8    withhold records to wait for the AOC negotiations to be completed. The Court

9    agrees that this would be an invalid reason for withholding, but does not find that

10   the EPA withheld records responsive to Request One, nor did it base its extension

11   on this impermissible reason. CARE contends that the EPA's counsel, Allyn Stern,

12   represented to CARE that the EPA was withholding the documents on grounds that

13   it was waiting for the AOC negotiations to be resolved—an invalid reason for an

14   extension under the FOIA. ECF No. 39-1 at 2. However, the notice provided to

15   CARE indicates that the EPA's reasoning for requiring the 10-day extension was

16   "[t]he need for consultation, which shall be conducted with all practicable speed,

17   with another agency or EPA offices having a substantial subject-matter interest in

18   your request." ECF No. 35-3, Exhibit 9. Thus, the EPA properly sought an

19   extension for a reason recognized by the FOIA. *See* 5 U.S.C.

20   § 552(a)(6)(B)(iii)(III). The EPA ultimately produced the requested records on

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 33

March 6, 2013, within the time allotted for the extension. Thus, the Request One records were not withheld; they were produced within the period designated by the properly brought extension.

### Whether CARE's "interim determinations" on Request Two are untimely because they are not final determinations

CARE also contends that the Agency's March 28 and April 30, 2013, responses to Request Two are not final determinations under the FOIA and therefore a final determination on Request Two is untimely. Thus, CARE maintains, the delay in issuing a determination on Request Two is not a "five-day" delay as the EPA claims but a delay of more than a year. ECF No. 52 at 2. As the Court determined above, the EPA responded within the definition described in *CREW*; accordingly, it finds this argument unpersuasive.

Thus, for these reasons, the Court finds that the undisputed facts show only one violation of the timeliness in responding to CARE's FOIA requests—and demonstrates a delay of only a few days. Common sense dictates that a single violation cannot constitute a "pattern" or a "practice." Accordingly, the Court finds that CARE's pattern and practice claim must fail.

///

///

///

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 34

**3.  Whether CARE "substantially prevailed" on Count III for attorney fee**

**purposes**

Count III of CARE's Second Amended Complaint alleges that the EPA

unlawfully withheld records responsive to FOIA Request Two under 5 U.S.C.

§ 552(B)(7)(A).  ECF No. 20 at 36. The EPA ultimately released these records, and

CARE concedes in its reply briefing that Count III is moot to the extent that CARE

initially sought a declaration that the EPA's Exemption 7(A) withholdings were

improper. ECF No. 52 at 6. However, CARE contends that this count is not moot

for purposes of an award of attorney fees and costs, having "substantially

prevailed" under the FOIA because the EPA voluntarily changed its position

following CARE's filing of the instant lawsuit. ECF No. 52 at 6-7. The EPA

counters that CARE did not substantially prevail because it released the records

due to "changed circumstances." ECF No. 48 at 5. The Court finds that the

undisputed facts indicate that the EPA released the Haak records because of

changed circumstances.

The fee-shifting provision of FOIA states that the Court "may assess against

the United States reasonable attorney fees and other litigation costs reasonably

incurred in any case under this section in which the complainant has substantially

prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "[A] complainant has substantially

prevailed if the complainant has obtained relief through either—(I) a judicial order,

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 35

or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The Ninth Circuit has crafted a two-step process for determining whether a party may be awarded fees and costs under § 552(a)(4)(E). To be eligible for an award, a party must show both that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information," and that "(2) the filing of the action had a *substantial causative* effect on the delivery of the information." *Church of Scientology of California v. U.S. Postal Serv.,* 700 F.2d 486, 489 (9th Cir. 1983) ("*Church of Scientology* "); *Rosenfeld v. United States Dep't of Justice*, 903 F.Supp.2d 859, 865 (N.D. Cal. 2012).[9]

---

[9] In 2001, the Supreme Court held that plaintiffs generally would only be eligible for attorney fees if they were "awarded some relief by [a] court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603 (2001). Congress then passed the OPEN Government Act of 2007, Pub. L. No. 110–175, which abrogated the rule of *Buckhannon* in the FOIA context and revived the possibility of FOIA fee awards in the absence of a court decree. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524-26 (D.C. Cir. 2011). The D.C. Circuit held that the "purpose and effect of this law, which

1  Defendant contends that a requestor does not prevail when an agency

2  produces previously withheld records after an exemption becomes inapplicable due

3  to changed circumstances. ECF No. 48 at 5. The Agency contends that

4  circumstances changed when, a month after the lawsuit was filed, the Haak Dairy

5  sold its cows and ceased operating as a dairy; as such, its production of the

6  documents was in response to those "changed circumstances" rather than CARE's

7  lawsuit. Here, the evidence indicates that the EPA produced the documents after

8  Haak Dairy told the agency it had sold all of its cows. CARE filed its lawsuit on

9  June 28, 2013. ECF No. 1. On July 9, 2013, the EPA claims that Haak Dairy told

10 the Agency it had sold all of its cows. ECF No. 34 at 5. Haak sold its cows in May,

11 2013. ECF No. 39-1 at 6. Two months later, on September 18, 2013, the Agency

12 released the Haak records. Thus, the information was released after Haak Dairy

13 told the EPA it sold its cows, the very reason the EPA cited for having released the

14 information. Accordingly, the Court finds that CARE has not sustained its burden

15 of showing that the filing of the lawsuit had a "substantial causative effect" on the

16 EPA's decision to release the records.

17 ///

18 ///

19 remains in effect today, was to change the 'eligibility' prong back to its pre-

20 *Buckhannon* form." *Id.*

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 37

4.  **Whether the EPA violated the Administrative Procedure Act**

Count VI of CARE's Second Amended Complaint alleges that the EPA violated the Administrative Procedure Act ("APA"). ECF No. 20 at 44.  Defendant EPA contends that Plaintiff does not challenge final agency action for which there is no other adequate remedy in a court, so its APA claim may not stand. ECF No. 34 at 21.

The parties agree that if the Court finds that CARE has an adequate remedy for its claims under FOIA, the Court need not consider CARE's parallel APA claims. ECF No. 52 at 11. However, if the Court finds that one or more of CARE's claims is not cognizable under the FOIA, CARE renews its request to submit additional briefing concerning its APA claims. *Id*.[10]

Having found above that CARE has no remedy against the EPA under the FOIA for not timely producing records or following its regulations, the Court grants CARE's request to allow the parties an opportunity to brief the merits of CARE's claim under the APA.

///

---

[10]  *But see Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) ("[T]he APA does not provide an independent basis for subject matter jurisdiction in the district courts.").

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 38

1    **IT IS HEREBY ORDERED:**

2      1. Defendant's Motion for Summary Judgment (ECF No. 34) is

3         **GRANTED in part and DENIED in part.**

4      2.  Plaintiff's Cross Motion for Partial Summary Judgment (ECF No. 39) is

5         **DENIED**.

6      3. The parties are directed to submit additional briefing, if desired, on the

7         availability of relief under the Administrative Procedure Act. Cross

8         Motions for Summary Judgment shall be filed by both parties on or

9         before **October 6, 2014**.  Responsive briefing will proceed in accordance

10        with Local Rule 7.1.

11    The District Court Executive is hereby directed to enter this Order and

12  provide copies to counsel.

13    **DATED** August 6, 2014.



14

15                                  THOMAS O. RICE
                                United States District Judge

16

17

18

19

20

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT ~ 39